THE KANAWHA VALLEY BANK, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3029.    Promulgated October 31, 1944.

*Charles W. Moxley, Esq.*, for the petitioner.
*E. L. Corbin, Esq.*, for the respondent.

OPINION.

LEECH, *Judge*: The issue is whether or not the parcels of real estate and the securities acquired by petitioner, under the circumstances set out in our findings of fact, constituted capital assets within the purview of section 117 (a) (1) of the Internal Revenue Code, 1939 edition.[1]

There is no doubt that in each instance these assets constituted "property held by the taxpayer." Respondent does not contend that they constituted "stock in trade" or "property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year." His contention is that they constituted "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

With respect to the three parcels of real estate involved, respondent relies on G. C. M. 21497, C. B. 1939–2, p. 187, which holds that in all cases parcels of real estate acquired by a bank by foreclosure must be considered as held by it primarily for sale to customers in the ordinary course of trade or business and that the gains and losses resulting from its disposition are ordinary in character. We think, however, that the reasoning upon which the announced rule is predicated can not be reconciled with our view expressed in *Thompson Lumber Co.*, 43 B. T. A. 726. We held there that a taxpayer corporation whose principal business was furnishing lumber and building material and which took over, either by foreclosure or voluntary conveyance, various properties representing the security pledged for unpaid accounts, even though its charter permitted it to legally carry on a real estate business, was not by reason of such acquisitions to be considered as carrying on such a business and that the gains and losses realized upon the disposition of these properties were capital in character.

In the present case the facts support more forceably than the facts in *Thompson Lumber Co.*, *supra*, the conclusion that the parcels of real estate were capital assets. In the latter case there were a number of properties involved, while here we have only three instances of acquisition and sale in the two years presented. Cf. *Ehrman* v. *Com-*

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) Definitions.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1).

*missioner*, 120 Fed. (2d) 607; *Snell* v. *Commissioner*, 97 Fed. (2d) 891. In *Thompson Lumber Co.*, *supra*, the taxpayer was legally empowered under its charter to carry on a real estate business, while in this case the petitioner is precluded by section 3128 of the West Virginia Code of 1937,[2] from engaging in such business. That statute permits the acquisition of real estate by a banking institution only for use as its offices or such as is acquired as an incident of the satisfaction of debts, and properties acquired in the latter case are required by the statute to be disposed of at the earliest practicable date.

We think it unreasonable to conclude that petitioner, forbidden by state law to carry on a real estate business, was actually engaged in that business and selling real estate to customers in the regular course thereof, merely because it had acquired and sold three parcels of real estate over a period of two years, the transaction in each instance being an incident to the collection or recovery of money loaned by it in the transaction of its regular banking business. We think that the three parcels of real estate here involved were capital assets in petitioner's hands within the purview of section 117 (a) (1), *supra*. *Thompson Lumber Co.*, *supra*.

With respect to petitioner's transactions in disposing of government securities allotted to it by the United States Treasury, we think the facts clearly demonstrate that these securities were never held by petitioner as investments, but were acquired for sale in the regular course of its business. It appears that these transactions have long been carried on by petitioner and that it has several firms as its usual

---

[2] * * . * * * * *

Any banking institution may acquire, own, hold, use and dispose of, real estate, which shall in no case be carried on its books at a value greater than the actual cost, subject to the following limitations and for the following purposes:

(a) Such as shall be necessary for the convenient transaction of its business, including, in the same building with its office or banking room, other offices or apartments to rent as a source of income; such investment hereafter made shall not exceed sixty-five per cent of the amount of its capital stock and surplus, unless the consent in writing of the commissioner of banking is first secured;

(b) Such as shall be mortgaged to it in good faith as security for debts in its favor;

(c) Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its business dealings;

(d) Such as it shall purchase at sales under judgments, decrees, trust deeds or mortgages in its favor, or shall purchase at private sale, to secure and effectuate the payment of debts due to it;

(e) The value at which any real estate is held shall not be increased by the addition thereto of taxes, insurance, interest, ordinary repairs, or other charges which do not materially enhance the value of the property.

Any real estate acquired by any banking institution under clauses (c) and (d) shall be disposed of by the banking institution at the earliest practicable date; but the officers thereof shall have a reasonable discretion in the matter of the time to dispose of such property in order to save the banking institution from unnecessary losses: Provided, That such property shall be disposed of within five years from the time it is acquired by the banking institution unless an extension of time is given in writing by the commissioner of banking.

customers for such securities. The plan to sell was arranged prior to the acquisition of the securities, which were transferred on issuance direct to petitioner's customers. The sale being coincident with the acquisition, the bonds in question were not an investment in petitioner's hands. Respondent is sustained in his treatment of the gain on their sale as ordinary income.

This same reasoning applies with equal force to the syndicate transaction of petitioner in the purchase and sale, on the same date, of certain Treasury bonds and respondent's action on this item is likewise accordingly sustained.

As to the acquisition of certain paving certificates as detailed in the findings of fact, it is noted that these were not sold or exchanged, but were paid on or before maturity by the obligors. In such case the payment does not constitute a sale or exchange for tax purposes under section 117 (f) of the Internal Revenue Code, 1939 edition, unless they be those of a "corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form." There is no indication that the paving certificates here were of that character. The evidence indicates that they constituted personal obligations of the abutting property owners secured by a lien upon such property. And it is not established that the certificates either carried "interest coupons" or were "in registered form."

Respondent contends that the item of gain in the sum of $10.06, realized on the sale of five shares of stock of Cities Service Co., was ordinary gain, since the stock was taken over as collateral upon a loan and, under G. C. M. 21497, *supra*, it must therefore be treated as held for sale in the regular course of business and the gain upon sale is ordinary in character. However, for the reasons above set out with respect to the issue upon the acquisition and sale of the real estate here involved, we hold that these shares of stock were capital assets in petitioner's hands. They can not be denied that character merely because acquired through the enforcement of a lien as an incident of the collection of an indebtedness.

*Decision will be entered under Rule 50.*