HARRY DUNITZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MAX DUNITZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5752, 5755. Promulgated August 30, 1946.

---

*Edgar W. Pugh, Esq.*, for the petitioners.
*Lawrence R. Bloomenthal, Esq.*, for the respondent.

OPINION.

Van Fossan, *Judge*: The principal issue is whether the amounts realized by the petitioners from the disposition of bonds originally executed by them and secured by mortgage on the Dexter Square Building constituted ordinary income or capital gain.

The respondent justifies his action in taxing as ordinary income profits from the disposition of the Dexter Square Building bonds on the ground that at no time had the petitioners relieved themselves of their liability for the payment of the mortgages or of the bonds and notes issued by them pursuant to the mortgages. He contends that such liability was a valuable factor in the final settlement and disposition of the bonds and continued until the obligations were canceled by the trustee in January 1939, thus giving rise to income. As an alternative argument, the respondent insists that, even if this Court recognizes the transfer of bonds and notes from the petitioners to their corporation as a sale, the bonds come within any or all of the first three classes of property excluded in section 117 (a) (1).[1]

The petitioners argue that at the most they were only contingently liable on the bonds in question and hence they were relieved of no obligation as principal when the bonds were canceled. They also contend that the agreement of January 1, 1934, to which they were parties, served to release their liability by reason of its extension of the due date. They further assert that, if the respondent's theory is correct as to the absence of a sale in the taxable year if income was realized on the cancellation of the petitioners' indebtedness through acquisition of the bonds, such income was realized at the time of acquisition.

In his brief the petitioners' counsel states that "under Michigan law the assumption of the mortgages by Harry and Max Dunitz, Incorporated, as agreed upon in the agreement * * * acted as a release from liability to petitioners." However, he quotes no Michigan law and cites no Michigan cases in support of his position. He cites only *United States* v. *Hendler*, 303 U. S. 564, to show that an assumption of indebtedness constitutes "other property" under the Federal statute.

The respondent further states that the entire plan was conceived and carried out in order to enable the petitioners to purchase their

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) Definitions.—As used in this chapter—

(1) Capital Assets.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l).

own obligations at a huge discount, to effect an alleged sale of the bonds as capital assets to a corporation, owned and controlled by themselves, to which the real estate had been transferred and, thus, to avoid the higher taxes to which the transaction would be subject at ordinary income tax rates.

Both the petitioners and the respondent now agree that income of over $147,000 was realized by the petitioners in 1939, but they differ as to the basis of its taxation. In order to derive the income in that year the petitioners must have made a recognizable sale or exchange of the securities. Otherwise the income was realized in the years of acquisition, as the petitioners argue. *United States* v. *Kirby Lumber Co.*, 284 U. S. 1. The facts of record are persuasive that the petitioners are correct in their position that a sale was effected, and we so decide.

However, in order that the petitioners may take advantage of the capital asset basis of taxation established by section 117, the bonds must not come within the classes of property specifically excluded therefrom by the statute. The respondent contends that the purchase and sale of bonds secured by mortgages on buildings which the petitioners managed or attempted to manage through such purchases, constitute an essential and integral part of their business. On the facts before us, the respondent's view is correct. The purchase of the bonds in question and other similar securities was inherent and necessary to the petitioners' business. The manifest purpose of acquiring them, their use to further that purpose, their retention, and sale or other disposition to assist in accomplishing that purpose, show clearly that the petitioners' single intent was to hold the bonds primarily for sale to customers in the ordinary course of their business.

It is obvious that the bonds were neither purchased nor held as an investment. As stated in Bouvier's Law Dictionary (3d Rev., vol. 2, p. 1681), the word "invest" means "To lay out capital in some permanent form so as to produce income," and Black's Law Dictionary (3d Ed., p. 1006) defines the word, "To loan money upon securities of a more or less permanent nature, or to place it in business ventures or real estate, or otherwise lay it out, so that it may produce a revenue or income." Funk & Wagnalls New Standard Dictionary likewise contains this definition: "To use (money) for any purpose from which profit is expected." The record affords no suggestion that the receipt of income from the bonds was even a minor factor of their acquisition and the conduct of the petitioners in connection with such acquisition and the treatment of the bonds belies any idea of their retention as an investment. See *Jack W. Schiffer*, 39 B. T. A. 161; *Kanawha Valley Bank*, 4 T. C. 252.

The petitioners' patent purpose in acquiring the bonds and their acts consequent thereto were not devoted to purchasing and holding

bonds as capital assets, but to buying, trading, and selling property to customers in a course of procedure established by them as a component part of their ordinary trade or business.

The bonds belong in the category of "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade and business." *United States* v. *Chinook Investment Co.*, 136 Fed. (2d) 984, and the profit derived by the petitioners from their sale is taxable as ordinary income.

An inspection of the books of Pingree Investment Co., an assumed name of the petitioners, shows that the petitioners bought and sold bonds aggregating several hundred thousand dollars in the three-year period prior to 1939. In that year it made sales totaling $584,477.45, on which it earned a profit of $177,762.48. The petitioners dealt in ten issues of bonds secured by mortgages on buildings, some of which they acquired and managed. In 1940 they carried out transactions involving eleven such issues, and eventually they owned all but four properties whose bonds they had so acquired. In view of this situation, the bonds may be well said to have constituted the petitioners' stock in trade or property of a kind which would properly be included in the petitioners' inventory and thus come within the scope of the first and second statutory exceptions.

The second issue requires little discussion. The amount paid by the petitioners to Wood was clearly and properly related to the management, conservation, and maintenance of property held for the production of income as provided in the statute.[2] Therefore, it is deductible in the stipulated sum of $3,000. See *Bingham* v. *Commissioner*, 325 U. S. 365. The item of $5,000 paid to Gallagher for defense of petitioners against an indictment is deductible as an ordinary and necessary expense under section 23 (a) (1). *Commissioner* v. *Heininger*, 320 U. S. 467. On brief, the respondent, in effect, concedes the deductibility of these two items.

*Decisions will be entered under Rule 50.*