Eddy D. Field v. Commissioner. Helen Field v. Commissioner.
Field v. Commissioner
Docket Nos. 13721, 13722.
United States Tax Court
1949 Tax Ct. Memo LEXIS 258; 8 T.C.M. (CCH) 170; T.C.M. (RIA) 49043; February 23, 1949
*258 Petitioners, husband and wife, in the taxable years 1942 and 1943 realized income from the sale of various parcels of real estate owned by them as community property. During these same years they also derived community income from a real estate and insurance brokerage business conducted by the husband and from the rental of other property. Held, that the real properties sold by petitioners in the taxable years were not capital assets within the meaning of section 117(a)(1) of the Internal Revenue Code, and that the profit derived constituted ordinary income and not capital gain. George Bouchard, Esq., 650 So. Spring St., Los Angeles, Calif., for the petitioners. A. J. Burley, Esq., for the respondent. ARUNDELL
Memorandum *259 Findings of Fact and Opinion These proceedings, consolidated for trial and decision, involve the following deficiencies in income and victory taxes for the calendar year 1943: Docket No.
Amount
Eddy D. Field
13721
$7,913.65
Helen Field
13722
8,083.13
In each case the petitioner's tax liability for the taxable year 1942 is involved by reason of the forgiveness features of the Current Tax Payment Act of 1943. The sole issue herein is whether income derived by petitioners in 1942 and 1943 from the sale of certain real properties constitutes ordinary income or was taxable as capital gain under the provisions of section 117 (a) (1) of the Internal Revenue Code. Petitioners appear to have abandoned the question raised with respect to whether the Commissioner is barred under section 275(a) from redetermining petitioners' income tax liability for 1942 in connection with computing their tax liability for 1943 under the provisions of the Current Tax Payment Act of 1943. In any event, it is clear that such a contention cannot be maintained. Lawrence W. Carpenter, 10 T.C. 64, Fred B. Snite, 10 T.C. 523. Findings *260 of Fact The petitioners Eddy D. Field and Helen Field are husband and wife, residing at Los Angeles, California. For each of the taxable years involved they filed separate individual income tax returns with the collector of internal revenue for the sixth district of California. The tax liability of Helen Field is involved herein as the real property in question was held by her and her husband as community property under California law. Eddy D. Field obtained a real estate brokerage license in 1927 and since that time has been engaged in business as a real estate and insurance broker in Los Angeles, California. During the taxable year 1943, he maintained three offices in that city and employed a number of real estate salesmen. His organization between January 1, 1942, and December 31, 1943, handled the sale of over 300 properties for which he received total commissions of $52,039.07 in 1942 and $72,177.83 in 1943. In 1934, Eddy D. and Helen Field organized a corporation known as Oxford Associates, paying in the amount of $2,000, and taking in exchange therefor all of the stock which they thereafter held equally. This corporation was organized to take title to various pieces of *261 real estate which petitioners might acquire from time to time. Between 1934 and 1941, Oxford Associates acquired various real estate properties in Los Angeles. Some of these properties it sold during this period but most were held as income producing units. On December 31, 1941, Oxford Associates was dissolved and the following 19 properties were distributed to Eddy D. and Helen Field as its sole stockholders: 2646 Vineyard
Baker Apartments (45 units)
300 S. Clark
1639 Gower (parking lot)
341 N. Croft
Lot 8, Block 39, Tract 9300
1144 Hi-Point
Lot 22, Block 20, Tract 6450
338 N. LaBrea
Lot 144, Tract 5070
1248 S. LaJolla
Lot 145, Tract 5070
1108 S. Longwood
Lot 146, Tract 5070
1315 S. Roxbury
(or Rockdale)
Lot 147, Tract 5070
2646 Van Ness
Lot No. 1, Block 5, Tract 7803
6016 Whitworth
Of these properties, 11 were improved income producing properties and 8 were unimproved lots. Of the 11 improved properties acquired as a result of the liquidation, petitioners sold the following described parcels in the year 1942: Date
Acquired
Date Sold
Sale Price
Cost Price
1108 S. Longwood
1/1/42
3/ 4/42
$ 9,650
$8,304.68
1315 S. Roxbury
1/1/42
7/23/42
11,950
9,824.04
*262 On January 26, 1942, Helen Field sold a residence at 1500 South Hauser for $9,100. She acquired a half interest in the property in 1936 and purchased the remaining onehalf interest in 1939. There was realized on the disposition of this property a gain of $1,697.96. The property at 1315 South Roxbury was a four-unit apartment acquired by Oxford Associates in 1938. It was sold in 1942 and the proceeds were used to apply on the purchase price of an eight-unit apartment at 6282 Commodore Sloat Drive. Petitioners reported in their income tax returns for 1943 as long-term capital gain the profit from the sale of the following properties: Date *
Acquired
Date Sold
Sale Price
Cost Price
1248 S. LaJolla
1/ 1/42
5/12/43
$17,109.66
$13,500.00
2646 Vineyard
1/ 1/42
6/16/43
13,250.00
10,500.00
900 Kenmore
12/26/41
6/ 9/43
44,000.00
32,022.91
6282 Commodore Sloat Dr;
8/29/42
6/11/43
23,900.00
19,715.52
341 N. Croft
1/ 1/42
6/ 5/43
9,524.37
7,026.93
1144 S. Hi-Point
1/ 1/42
9/16/43
7,499.96
5,500.00
2203 Beechwood
3/24/43
10/13/43
57,500.00
44,500.00
300 S. Clark
1/ 1/42
8/ 5/43
14,000.00
9,520.00
*263 By the end of the calendar year 1943, petitioners had sold all but four of the income producing properties and the eight unimproved lots received on the liquidation of Oxford Associates. From the sale of the first four properties listed above as sold in 1943 and the sale of a 14-unit building on West 17th Street, petitioners realized approximately $44,000, which sum they used in the purchase of a 5-story 75-unit apartment house at 1830 North Cherokee. The Cherokee property was purchased in July, 1943, for $176,000 and required a down-payment of $35,000 and an additional $1,500 for taxes and escrow expenses. This apartment building is still owned by the petitioners. Petitioners received monthly rentals of approximately $1,900 from the five properties sold to finance the Cherokee purchase, whereas the monthly rental income of the Cherokee apartments is in excess of $4,600. The property at 341 North Croft was sold on June 5, 1943, and the proceeds used to purchase a 12-unit apartment at 6439 South Orange which petitioners in turn sold on July 8, 1943. A house at 1144 South Hi-Point and a 10-unit apartment at i203 Beechwood were sold by petitioners and the proceeds used to buy an *264 interest in a 6-story apartment house at 801 South Gramercy. A 4-unit apartment at 300 South Clark was sold and the money obtained was used to purchase two double bungalows on a corner lot which cost $8,000 and produced substantially the same income. In addition to the properties acquired from Oxford, petitioners reported as short-term capital gain the profits from the sale of other real estate during the calendar year 1943 as follows: Date
Address
Acquired
Date Sold
Sale Price
Cost Price
626 W. 17th St.
6/23/43
6/23/43
$17,500.00
$12,750.00
6439 S. Orange
6/ 1/43
7/ 8/43
27,300.00
24,825.51
424 Kings Rd.
2/24/43
3/24/43
6,450.00
6,006.00
526 Harper
1/ 9/43
2/26/43
5,900.00
5,049.53
849 S. Holt
6/ 6/43
7/ 6/43
7,000.00
6,357.51
1208 Pointview
2/20/43
3/23/43
6,900.00
6,751.96
2031 Manning
10/ 1/43
11/ 1/43
5,600.00
4,533.10
The net rental income derived by petitioners during the calendar years 1942 and 1943 from rental property was $11,287.58 and $16,958.08, respectively. The real properties sold by petitioners during the taxable years 1942 and 1943 were properties held primarily for sale to customers in the ordinary *265 course of their trade or business of buying and selling real estate for profit. The deficiency notice in each case reads as follows: "The properties sold in 1942 and 1943 from which you reported net capital gains in the amounts of $3,607.19 and $29,239.73 respectively, are not capital assets within the meaning of section 117(a)(1) of the Internal Revenue Code, and the gains from the sale or exchange of the properties reported in 1942 and 1943 are fully taxable as business income. The net capital gains reported have been adjusted to reflect their proper status as business income." Opinion ARUNDELL, Judge: Specifically, the question herein is whether the properties sold by petitioners in 1942 and 1943 were capital assets within the meaning of section 117(a)(1) of the Internal Revenue Code* or were "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." *266 During the taxable years involved, Eddy D. Field was engaged in business as a real estate and insurance broker. Apart from this business he was also engaged in holding and renting various properties, chiefly apartments, all of which were owned by him and his wife as community property. Respondent's contention is that the transactions involving the purchase and sale of various properties during 1942 and 1943 were of sufficient frequency and continuity to establish the petitioner in a third trade or business, that of selling real estate on his own account. Numerous tests have been applied by the courts in determining whether the conduct of a taxpayer in acquiring and selling real estate constitutes the carrying on of a trade or business. See Boomhower v. United States, 74 Fed. Supp. 997. The courts have considered the frequency and continuity of the sales or sales related activity over a period of time, Miller v. Commissioner, 102 Fed. (2d) 476; the activity of the seller and those acting under his instructions or in his behalf, or the time and labor given to effect the transactions such as by improvements or advertisement to attract purchasers, Oliver v. Commissioner, 138 Fed. (2d) 910; *267 the extent or substantiality of the transactions, Miller v. Commissioner, supra; and to some extent the reasons for, purpose or nature of the acquisition of the property. Harriss v. Commissioner, 143 Fed. (2d) 279; Kanawha Valley Bank, 4 T.C. 252. To ascertain whether petitioners were engaged during the taxable years in the business of selling real estate on their own account, we must examine all of the transactions during those years and not only those from which the petitioners reported the profit as long-term capital gain. We also may look to the sales made by petitioners in other years insofar as they relate to the frequency and continuity of such transactions. Phipps v. Commissioner, 54 Fed. (2d) 469. The record discloses that petitioners in 1943 handled no less than 25 separate transactions involving 10 purchases and 15 sales of rental properties. It is significant that 7 of the 10 properties purchased in 1943 were resold within two months after the date of purchase. Although petitioners offer various reasons to account for the sale of these properties, we regard such a rapid turnover of properties, all at a profit, as *268 inconsistent with the concept of investing in real property for the purpose of securing rental income. In the calendar years 1942, 1943, and 1944 petitioners sold a total of 27 different real properties, all at a profit. Three properties were sold in 1942 for $30,700, from which net gains of $5,169.24 were realized. In 1943, they sold 15 parcels for $263,433.99, from which they derived net gains of $50,894.64. In contrast, petitioners reported net rental income of $11,287.58 and $16,958.08 for 1942 and 1943, respectively. In 1944 nine properties were sold. These facts demonstrate that the transactions were of sufficient frequency, continuity and substantiality to constitute the carrying on of a business. Petitioners explain that those properties were purchased and held by them for investment with the idea of later selling them to acquire larger properties which they regarded as better investments. Petitioners' reasons for purchasing the various properties in question are of little significance if the sales were so extensive as to establish them in the business of selling real estate on their own account. Ehrman v. Commissioner, 120 Fed. (2d) 607; Richards v. Commissioner, 81 Fed. (2d) 369. *269 Moreover, in view of the number of properties handled by the petitioners, this explanation actually indicates that they were in the business of buying and selling realty for a profit and using those profits to increase their investments in other rental property. We would not think it important that they chose to retain such rental units as the 45-unit Baker and 75-unit Cherokee Apartments. How a taxpayer may invest his profits would seem to have little bearing on the question of whether or not he is engaged in a trade or business. The property at 1500 South Hauser which contained four rental units was acquired by Helen Field in 1936 and sold by her in 1942. The profit realized on this transaction appears to have been treated as community property and the petitioners reported one-half thereof on their separate Federal income tax returns. It is suggested that this transaction was not handled along with the other purchases and sales and that clearly the profit should be treated as a long-term capital gain. In the absence of more detailed evidence and in view of the casual treatment accorded this transaction on brief, we are disposed to treat the profit from this sale in the same manner *270 as the gain from the other properties sold by the petitioners during the taxable years. On all of the facts of record, we are of the opinion that the properties sold by petitioners during 1942 and 1943 were held by the taxpayers primarily for sale to customers in the ordinary course of their trade or business and that the gain realized from the sale of these properties is properly taxable as business income and not as capital gain under the provisions of section 117(a)(1) of the Internal Revenue Code. Decision will be entered under Rule 50. Footnotes
*. The properties which are shown as being acquired by petitioners on January 1, 1942, are the properties petitioners received from Oxford Associates on liquidation on that date. These properties were all acquired by the corporation between 1934 and 1941.↩
*. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *.↩