WINIFRED H. LYNN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22736. Promulgated December 12, 1950.

*Martin F. McCarthy, Jr., Esq.*, for the petitioner.
*Elmer L. Corbin, Esq.*, for the respondent.

834

**OPINION.**

OPPER, *Judge:* Whether there was a redemption of "certificates or other evidences of indebtedness issued by any corporation \* \* \* in registered form" so as to result in capital gain under section 117 (f), Internal Revenue Code,[1] does not on these facts depend so much on whether there was registration, cf. *Alice McCourt Lamm*, 15 T. C. 305, as on what instrument was issued and by whom. There was not as in *Norman Buckner*, 43 B. T. A. 958, and *Rieger* v. *Commissioner* (CA–6), 139 Fed. (2d) 618, even a receivers' certificate of claim which could be registered and transferred.

The instruments we are concerned with here, as described by petitioner herself, are the "assignments of claims against the closed \* \* \* Bank \* \* \*." These could not be evidences of indebtedness issued by a debtor corporation, still less could they have been registered by the issuer. See *Alice McCourt Lamm, supra*. And that this description of the subject matter of the redemption was not inadvertent is shown by another statement in petitioner's brief that "in this case non-negotiable assignments of claim are involved."

The facts show that only because the claims were purchased from others did petitioner have any documents as evidence. Even they

---

[1] (f) RETIREMENT OF BONDS, ETC.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

were non-transferable and if the claims had again been assigned, not that instrument, but a new one, would have evidenced the second assignment. Depositors of the bank who did not assign their claims apparently had no "evidence of indebtedness" of any kind.[2]

To conclude that these assignments, issued by individuals who were not debtors, see *Kanawha Valley Bank*, 4 T. C. 252, and recorded not by them but on the receivers' books, see *Gerard* v. *Helvering* (CA-2), 120 Fed. (2d) 235, could comply with the carefully exclusive language of the statute would require disregarding its terms completely. This we are unable to do.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

HARRON, *J.*, dissenting: The rule is generally accepted now that bank deposits represent indebtedness of a bank.[1] If the premise is incorrect, the petitioner has no case here. The first question is whether the corporate-debtor ever issued any evidence of its indebtedness to depositors. The evidence, as I understand it, shows that the bank originally issued passbooks to depositors which were evidence of its indebtedness to depositors.[1] The claims in question are claims for payment of savings accounts, and the general practice of banks today is to issue passbooks which are numbered. This is so obvious that it appears that the taxpayer's representatives in this proceeding have not emphasized the point. The specific evidence that there were passbooks consists of two exhibits—the receiver's records of approved depositors' claims in which the number of the passbooks is entered, as I understand an exhibit, and the market quotations in a daily paper of Davenport, Iowa, which describes the subject being traded as "Union Savings Passbooks." Also, part of a stipulation of facts in this case, which is mentioned in a footnote, has been misconstrued. The part of the stipulation in question is in a text which relates to the procedure which was followed in the receivership proceeding in the Iowa District Court in which the District Court did not require any other proof of the claims of the depositors than the bank's records of depositors' accounts, and to other procedures followed by the receiver. This means that the bank's accounting records would control if any discrepancies existed between them and the passbook balances, but a reasonable presumption is that the passbook balances were the same as the bank's records of the balances. If the foregoing understanding is not correct, then the petitioner has stipulated herself out of court, but I cannot believe that she intended to do so. And so, I

---

[2] It is stipulated. as petitioner's brief insists. that "the bank's *books of account* [are] the only evidence" of the depositor's claim.

[1] Zollman. Banks and Banking (Perm. Ed.) pars. 1171, 1205, 3153; and 9 Corpus Juris Sec., section 271.

regard the evidence before us as showing that the bank originally isssued evidence of its debt to its depositors.

The second question is whether that evidence of the indebtedness was in registered form. The majority opinion does not reach this question, but the evidence shows clearly that there was a record which constituted a register which the bank, through its receiver, set up after the District Court approved the depositers' claims, and that payment on these claims could be made only to the registered owners.

The third question is whether section 117 (f), in its reference to "other evidence of indebtedness," embraces indebtedness of a bank to depositors evidenced by passbooks which have been put in registered form. The case of *Rieger* v. *Commissioner*, 139 Fed. (2d) 618, is authority for holding that section 117 (f) applies. Candor compels saying that this Court in this case indicates its reluctance to follow the *Rieger* case which reversed our opinion which is reported *sub nom Virgil Schaeffer, et al.*, 47 B. T. A. 727. In this proceeding, we again rely upon *Gerard* v. *Helvering*, 120 Fed. (2d) 235, which we cited in *Virgil Schaeffer, supra*, which, however, the Sixth Circuit Court of Appeals considered as inapplicable in its Opinion (p. 622) in the *Rieger* case.

Because I believe we should recede from the view we expressed in the *Virgil Schaeffer* case, and follow the rule of the *Rieger* case, and that the first and second questions above set forth should be answered affirmatively, on the evidence, I respectfully dissent from the conclusion reached in this proceeding.

The foregoing might suffice but I believe the question is of sufficient importance to taxpayers in general, as well as to the petitioner, to warrant a more extended discussion of the evidence, and, indeed, the brevity of the majority opinion seems to make such discussion necessary. Furthermore, I think the close similarity of the situation in this case to that in the *Rieger* case, upon which the petitioner relied, should be demonstrated. This case differs from the *Rieger* case only with respect to the formal procedures of the respective receivers of the bank there involved and of the bank here involved. Since taxation is a practical matter, and the equal treatment of taxpayers is the desirable objective, I believe this petitioner should receive the same treatment as did the taxpayers in the *Rieger* case.

There is no difference between the parties on the point that the Davenport Union Savings Bank continued in existence and that its receiver represented the bank and acted for it. See *Rieger* v. *Commissioner, supra*. What was done by the receiver is to be regarded as done by the bank. The point of difficulty here is that the bank did not issue to depositors a new instrument in the form of a certificate of proof of claim as was done by the bank in Dayton, Ohio, in the *Rieger* case. The issuance of a certificate of claim facilitated trans-

fers of claims of depositors of the Ohio bank. In this case, however, there was issuance of an instrument which the petitioner contends was for all practical purposes the same as the certificate of claim involved in the *Rieger* case. With that contention I agree, recognizing, of course, that the caption on the instrument "Assignment of Claim" gives the appearance at first that the instrument was the same as an ordinary assignment. It was not, but if it had been, the petitioner still should not fail because, as I understand the situation, the claim was evidenced by passbooks and they were registered instruments, as is pointed out above. Petitioner's representatives have made this case difficult by placing too much reliance upon the method by which depositors' claims were assigned. Even so, the matter has been clarified and explained by the testimony of the receiver who was in charge of the Davenport bank. I come to the conclusion that the receiver of the Davenport bank, hence the bank, issued the printed instruments called "Assignment of Claim." These were printed forms, approved by the Iowa Superintendent of Banks, and they were evidence of approved depositors' claims. A depositor was required to execute the instrument, and it was executed also, by the bank, through the receiver. A depositor could not simply assign his claim, as the holder of the ordinary claim against a debtor can assign his claim. A depositor who wished to liquidate his approved claim by selling and assigning it had to do the following: He applied to the bank for its printed form consisting of an original white sheet and a duplicate pink sheet. No other form could be used. The depositor executed both copies and left them with the receiver who also executed it and gave it a number. The bank retained the original copy, giving the purchaser, or assignee, the duplicate. If the assignee desired to retransfer the claim, he had to surrender the instrument to the bank, and the bank issued a new instrument to the new assignee, repeating the procedure. Also, no payments could be made on a claim unless the pink duplicate of the instrument was presented to the bank for endorsement. I am unable to see any difference, in substance, between the issuance of *one* certificate of claim for each approved claim, as was done by the Ohio bank in the *Rieger* case, under which each assignment was registered, without the necessity of issuing a new certificate as ownership changed through assignments, and the issuance of a separate, recorded instrument each time the ownership of a claim changed, as was done by the Davenport bank in this case. In both instances, the respective banks issued the instrument. It appears to me that the method followed by the Davenport bank more closely resembles the procedure which is followed where bonds are put in registered form, i. e., when ownership changes, a new bond is issued in the name of the new owner. I think the majority view in this proceeding proceeds from a misunderstanding of the evidence,

which I must admit has not been clearly presented by petitioner's representatives. But we should be able to understand the situation upon our own study and analysis of the record before us.

I think there can be no doubt whatever that the "instrument" issued by the Davenport bank, whether it be regarded as the original evidence of the bank's indebtedness—the passbooks—or the printed instruments captioned "Assignment of Claim," which, also, was issued by the bank, was in registered form. The receiver set up a record of the approved claims of depositors after they were approved by the District Court which certainly was a "register" of the bank's obligations, and must be distinguished from the bank's accounting records which were separate and distinct. The receiver's new record is mistakenly classified by the respondent as a record of accounts payable, which is what the bank's *original* accounting records were, but not the new record which the receiver set up. His register determined what could be paid and to whom. Payments could be made only to the owners of claims as shown by his record, or "register," which in every respect satisfies the requirements of section 117 (f). See *Matilda S. Puelicher*, 6 T. C. 300, 303. Registration means that the obligation runs only to the registered owner. See 47 Harvard Law Review 741. In this record was noted the number of the passbook, the name of the original owner of the claim, the amount of the claim, payments made, and the name of an assignee, if any, and of the amount of the claim as owing to him.

The authorities cited in the majority opinion are not applicable to this proceeding. In the case of *Alice McCourt Lamm*, the debtor-corporation issued nothing to purchasers of its notes, but they entered into an agreement among themselves and appointed a collection agent to collect note payments for them. Such facts do not exist here. In the case of *Kanawha Valley Bank*, the indebtedness in question was that of individuals rather than a corporation, because of which section 117 (f) could not possibly apply.

I respectfully dissent.