Wade H. Cooper v. Commissioner.
Wade H. Cooper v. Commissioner
Docket No. 24322.
United States Tax Court
1953 Tax Ct. Memo LEXIS 175; 12 T.C.M. (CCH) 820; T.C.M. (RIA) 53252; July 13, 1953
*175 Petitioner purchased from certain stockholders of a liquidated bank, who had already been paid 100 per cent of their deposit claims, certain claims asserted for interest upon such deposits subsequent to the closing of the bank, which claims were then in litigation. An assignment was taken from each stockholder of his interest claim, and shortly thereafter the litigation was terminated and petitioner was paid upon the assigned claims an amount in excess of his cost thereof. Such claims held not to constitute certificates of indebtedness within the purview of Sec. 117 (f), Internal Revenue Code, and the gain realized held to be ordinary income. Petitioner's stock in the closed bank held, upon the record, to have become worthless prior to December 31, 1941, and his loss thereon not subject to be carried forward to the taxable year 1946 under Sec. 117 (e), Internal Revenue Code. Wade H. Cooper, University Club, 1135 16th Street, N.W., Washington, D.C., pro se. Paul E. Waring, Esq., and George J. LeBlanc, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: A former decision by us in this proceeding entered September 7, 1951, determining the issues in favor of the respondent, was reviewed by the United States Court of Appeals for the Fourth Circuit. By the opinion of that court on June 19, 1952, this Court was sustained in its holding that the gain realized by the petitioner as a result of the transactions here involved did not constitute a gift to him. However, the court remanded the proceeding with direction that we further consider the question of whether the petitioner is entitled to relief under section 117 (e) and (f) and section 23 (g) (2), Internal Revenue Code. The court in doing so stated that it expressed no opinion on its part as to the bearing of these sections upon the petitioner's case. Upon receipt *177 of the mandate of the circuit court the proceeding was set down for hearing and the parties given the privilege of introducing additional proof if they so desired. Certain additional proof was introduced and is here considered. We include herein by reference our findings of fact as set out in our former report entered September 7, 1951. Additional facts hereinafter recited are found upon the additional evidence introduced upon the second hearing. Findings of Fact The petitioner, a resident of Washington, D.C., had been for approximately 25 years prior to the year 1933 an executive and stockholder of several banks in the District of Columbia. One of these was the United States Savings Bank, hereinafter referred to as "the Bank", of which, in 1933, the petitioner was president and the owner of 560 shares, or 56 per cent, of its authorized capital stock. This stock had been acquired by petitioner over a period of years at an estimated total cost of $84,000. On March 6, 1933, the United States Savings Bank, as well as all other banks in the United States, was closed by Presidential proclamation. On March 17, 1933, the Acting Comptroller of the Currency, under whose jurisdiction and *178 supervision the Bank was operated, having decided that the Bank should not be reopened, appointed a conservator, and later, on February 10, 1934, the Comptroller of the Currency appointed a receiver, in each instance acting pursuant to statute. In the meantime, on September 12, 1933, the petitioner had filed a bill in equity in the Supreme Court of the District of Columbia against the Secretary of the Treasury, the Comptroller of the Currency, and various other officials of the Treasury Department, in which he alleged that the defendants were seeking to merge the United States Savings Bank with the Hamilton National Bank then in process of organization, and prayed for an injunction to prevent the carrying out of such plan. Upon the hearing of this proceeding the court announced that he would not approve the anticipated sale of the Bank under the conditions then prevailing, but continued the proceeding for further hearing in respect of any plan for reorganization of the Bank which might be proposed by the petitioner. The petitioner thereupon submitted a plan of reorganization to the Comptroller of the Currency by whom it was disapproved, whereupon the petitioner filed a supplemental *179 bill on September 30, 1933, setting forth his plan for reorganization with certain modifications and asking that the defendants be required by mandatory injunction to approve such plan for the reopening of the Bank. Testimony was heard and after consideration the court denied the prayer of the bill and dismissed it. This action of the court was appealed by the petitioner to the Court of Appeals for the District of Columbia, which court upheld the action of the lower court and held that the Comptroller of the Currency was acting within his statutory authority in refusing to adopt the proposed plan of reorganization. ( Cooper v. Woodin, et al., 72 Fed. (2d) 179). Thereafter, on June 28, 1934, the petitioner herein filed a suit in the Supreme Court of the District of Columbia against the Secretary of the Treasury and others in which he asked a decree terminating the receivership of the Bank and the return of the assets to the original officers and stockholders of the Bank. A motion by the defendants to dismiss this bill as bad in substance was granted by the court and the bill dismissed. This decision was appealed by the petitioner herein to the Court of Appeals for the District *180 of Columbia, which court, on July 20, 1936, affirmed the action of the lower court. United States Savings Bank v. Morgenthau, et al., 85 Fed. (2d) 811, cert. denied 299 U.S. 605, rehearing denied 301 U.S. 666. In the course of its opinion the appellate court stated: "It is contended by the appellants that the receiver's statements of condition of the Bank's assets disclose that the Bank is now solvent. Their computation, however, excludes from consideration the interest which has accrued upon the debts of the Bank since the date when the receiver took possession of it. It is contended by appellants that interest should not be computed upon the Bank's debts after the time when it was closed by the receivership, that the claims of the creditors at that time became claims in rem against the assets of the Bank and afterwards bore no interest as against the stockholders. * * * It is plain, however, that no part of the assets of the Bank may be turned over by the receiver to the stockholders until after both the principal of the debts and the interest thereon are fully paid. In the present case the assets are not sufficient in value to pay both in *181 full, and consequently the stockholders are not entitled to demand a restoration of the Bank and its property to them." Between July 20, 1936, the date of the decision of the Court of Appeals for the District of Columbia in the above-mentioned case, and March 13, 1943, the petitioner herein made a number of attempts to have the courts reconsider or set aside and vacate that decision. The petitioner's last motion requesting such action was denied on April 15, 1943. In February 1937 the receiver for the Bank levied an assessment of 100 per cent against the stockholders of the Bank, and in August 1937 filed suit to collect the same. The petitioner herein filed a counterclaim in such proceeding, and early in 1944 both the receiver and the petitioner herein moved for summary judgment. On such motion the court held that there was no merit to petitioner's counterclaim in which he sought to have the court direct the distribution of the assets then in the hands of the receiver, in whole or in part, to the stockholders and so deprive the depositors of interest on their claims, to which petitioner contended they were not entitled. The court, in granting the receiver's motion, stated that *182 the question of whether the depositors were entitled to interest was res judicata, citing United States Savings Bank v. Morgenthau, et al., supra.Parsons, Receiver, v. Barry, et al. (Dist. Ct. D.C., June 15, 1944) 59 Fed. Supp. 221, affd. per curiam (Cooper v. Parsons, Receiver, CADC, March 12, 1945) 148 Fed. (2d) 21, cert. denied October 8, 1945, 326 U.S. 726, rehearing denied November 5, 1945, 326 U.S. 808. The petitioner herein compromised the assessment against him as a stockholder of the United States Savings Bank during the year 1944 at the rate of $13.25 per share. This rate of compromise was assumed to be that paid also by other stockholders. Petitioner's stock in the United States Savings Bank became wholly worthless prior to December 31, 1941. Subsequent to the taking over by the receiver of the Bank's assets in 1934, that officer in that year issued to each of the depositors of the Bank a receiver's certificate setting out the proved claim of such depositor. These certificates were serially numbered and in the case of depositors with savings accounts and in case of holders of certificates of deposit, *183 these carrying interest, the proved claim as set out in the certificate included in the total interest through March 5, 1933, the date the Bank was closed. These certificates carried no other item of interest nor did they evidence any obligation on the part of the Bank or the receiver to pay any amount by way of interest or otherwise on the total amount as shown on the face of the certificate. These certificates carried on the reverse side a form for execution by the holder in case of assignment and a form for the entry of dividends on the proved claim which might be paid to the holder by the receiver. The total sums evidenced in each case by these receiver's certificates were paid to the holder thereof in four dividends of 65 per cent, 15 per cent, 10 per cent, and 10 per cent. The payment of the last dividend, representing the complete liquidation of these certificates, was made by the receiver during the year 1938, and these certificates surrendered by the holders to the receiver. After the payment by the receiver in each case of the full amount represented by the outstanding receiver's certificates, there remained in the hands of the receiver certain assets against which the right *184 of the depositors of the Bank to receive interest on their deposits over and above any amount evidenced by the receiver's certificates or included in any way in their proved claims was asserted. The interest claimed was for the period subsequent to the closing of the Bank. The rate of such interest to be paid and the fact as to whether such claims represented a charge against the assets remaining in the hands of the receiver were the subject of prolonged litigation, it being ultimately held that the stockholders were entitled to interest at the rate of six per cent. Certiorari was denied in this proceeding by the Supreme Court of the United States on October 8, 1945, and on November 5, 1945, that court denied petitioner's application for rehearing thereon. Parsons v. Barry, supra. By reason of such decision it was determined that an interest dividend was payable by the receiver on proved claims of depositors equal to 10 per cent of the principal amount of such claims. Shortly before October 5, 1945, the petitioner mailed postcards to certain of the former depositors of the Bank requesting them to visit him at his office. Many of them did so, and it was explained to them by the petitioner *185 that under the proceeding pending before the Supreme Court of the United States the question was whether the rate of interest to be allowed would be at three or six per cent, and he offered such of them as desired to assign their claims to him and receive immediate payment the sum of three per cent for such assignment. Many of them accepted this proposition and these executed a form of assignment prepared by the petitioner, as follows: "WADE H. COOPER 1405 V Street, N.W., Washington, D.C." (100 per cent principal had all been paid) "ASSIGNMENT OF CLAIM "For and in Consideration of the sum of $ and other good and valuable considerations, the receipt of which is hereby acknowledged, the undersigned does hereby transfer, assign and convey to Wade H. Cooper all right, title and interest in and to my proved claim against the United States Savings Bank, of Washington, D.C., and my Receiver's Certificate No. evidencing same. I transfer, assign and convey unto said Wade H. Cooper all my right, title and interest in and to said proved claim, and the said Receiver's Certificate evidencing the same. Said Receiver is hereby authorized and directed to note this transfer, conveyance and *186 assignment on the books and records of the Receivership, and to pay to said Wade H. Cooper whatever amount is found to be due me, if any, by reason of said proved claim. "Witness my hand and seal this the day of 1945. Witness Address Signed (SEAL) Address " These assignments procured by the petitioner were filed by him with the Comptroller of the Currency and a few days later the final decision by the Supreme Court of the United States terminating the litigation was announced. The rate of interest as established by such litigation was six per cent. On November 5, 1945 the receiver of the Bank paid certain of the claims assigned to petitioner as detailed above, but for some unexplained reason did not deliver to petitioner the checks covering other claims assigned to him in the sum of $10,619.83, these being delivered to him in the following year, 1946, which is the year before us. Of the total of $10,619.83 in checks delivered to petitioner in 1946, checks totaling $9,080.61 were delivered to him during January of that year, or within six months following the acquisition by him of the assignments of the interest claims from depositors. The balance of the total of $10,619.83 *187 was covered by checks delivered to him during 1946 but after the expiration of the six months' period. The $10,619.83 of interest claims paid petitioner in 1946 had been acquired by him from the depositors at a total cost of $3,185.95, the difference, or $7,433.88, representing the gain realized by him on these transactions. Opinion The rule is clear that the worthlessness of stock is established by a determination of insolvency of the corporation and subsequent total extinction of the stockholders' equity. Deduction for such a loss is allowable only for the year in which this condition of worthlessness may be ascertained from some identifiable event. United States v. While Dental Manufacturing Co., 274 U.S. 398; Gowen v. Commissioner, 65 Fed. (2d) 923, cert. den. 290 U.S. 687. In the present case there is no doubt that the petitioner sustained a loss as a result of the worthlessness of his stock in the Bank, and whether he is entitled to relief under sec. 23 (g) (2) and sec. 117 (e) of the Internal Revenue Code, [1] is dependent upon a showing that the loss, for purposes of deduction, was first ascertainable by an *188 identifiable event either in the taxable year or, if prior to that year, then subsequent to December 31, 1941, in which event a carry-over would be permitted. *189 In the present case the facts clearly establish, in our opinion, that petitioner's stock in the Bank became wholly worthless prior to December 31, 1941, and that there are identifiable events determining such worthlessness. On July 20, 1936, the United States Court of Appeals for the District of Columbia rendered its opinion in the case of United States Savings Bank v. Morgenthau, et al., supra, holding that it had been definitely established that the assets of the Bank were insufficient to meet its indebtedness to creditors, and it follows that the stockholders possessed no equity in such assets at that time. It is true that this decision, due to continued litigation in an effort to have the decision vacated and set aside, was not finally disposed of until April 15, 1943, when the Supreme Court finally denied certiorari. The result of such denial was that the circuit court of appeals was correct in its determination. We think this decision by the court was sufficient to determine the worthlessness of petitioner's stock in 1936 and the petitioner has offered no evidence that such stock had any value subsequent to that year. We cannot conceive of any investor being *190 willing to pay anything for such stock in the face of this decision and the facts as determined by the court. If this decision were not sufficient as an identifiable event to demonstrate the worthlessness of the stock in 1936, we have the action of the receiver in February 1937 in his levying of an assessment of 100 per cent against the stockholders of the Bank. This action would in itself be, in our opinion, sufficient to demonstrate the worthlessness at that time of the stock of the Bank. It is true that the record contains considerable evidence tending to show that the Bank at the time it was placed in receivership was not in fact insolvent and that its subsequent insolvency was the result of gross mismanagement of the proceedings in receivership. These facts, however, do not bear on the question which we have here, which is simply the fact of worthlessness of the stock and when such worthlessness was ascertainable and not the cause of worthlessness. We think our holding that the stock of the Bank became wholly worthless prior to December 31, 1941, is fully justified upon this record. Petitioner, accordingly, cannot be held entitled to carry forward any portion of this loss *191 to 1946 under sec. 23 (g) (2) and sec. 117 (e). This brings us to the question of whether petitioner is entitled to relief under the provisions of sec. 117 (f), Internal Revenue Code. [2] This question is answered by the determination as to whether the assignments procured by petitioner from the depositors of the Bank of their unliquidated interest claims constituted "certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof) with interest coupons or in registered form." If they are of this character the gain realized upon their payment by the receiver must, in the hands of petitioner, be considered as a payment received on a sale or exchange and consequently the gain realized therein to be capital gain taxable at capital gain rates. *192 It is true that the depositors of the Bank are shown to have been issued receiver's certificates which were serially numbered, evidencing the indebtedness of the Bank to the depositor, and were made subject to transfer by assignment. Such receiver's certificates seem to be similar in character to those involved in Rieger v. Commissioner, 139 Fed. (2d) 618, cited by the circuit court on its remand of this proceeding. However, these receiver's certificates evidenced none of the indebtedness represented in the interest payments later made to depositors, and such certificates had been paid and satisfied by the receiver in their full amounts seven years prior to the transactions involved herein under which petitioner acquired assignments from the depositors of certain unliquidated interest claims. No evidence of indebtedness was ever issued by any corporation with respect to such interest claims. The only evidence of indebtedness issued by the Bank were the checks by the receiver making payment to petitioner of the assigned claims. All that petitioner ever acquired from the depositors of the Bank through his purchase of their interest claims were choses in action covering *193 litigated claims unliquidated in amount and not determined to be obligations of the insolvent Bank until subsequent to the acquisition of such claims by petitioner. We cannot see, upon this record, that these interest claims acquired by petitioner could be considered as certificates of indebtedness within the purview of sec. 117 (f). We do not have here a question arising upon facts similar to those existing in Rieger v. Commissioner, supra, where unsatisfied and outstanding receiver's certificates were purchased by the taxpayer. Our question more resembles the one involved in Winifred H. Lynn, 15 T.C. 832, where no receiver's certificates were issued but the taxpayer merely purchased from depositors their claims against a closed bank, taking from them written assignments. There we held that such assignments did not come within sec. 117 (f). See also Alice McCourt Lamm, 15 T.C. 305, affd. 192 Fed. (2d) 1017, holding that where past due notes of a corporation were purchased by the taxpayer and transferred to a trust company for collection, the fact that such company maintained an official list of the owners of such notes and required *194 that any transfer of an interest be evidenced by assignment did not make the notes acquired evidences of indebtedness in registered form within the meaning of sec. 117 (f). We hold that the gain realized by petitioner upon the payment of these assigned interest claims constituted ordinary income and not capital gain. In this connection we might say in passing that petitioner in no event, even if it be held that the assignments represented certificates of indebtedness within section 117 (f), would be entitled to treat the total gain from payments made in 1946 at capital gain rates, as it is noted that of the total amount of $10,619.83 paid in that year by the receiver, $9,080.61 was paid within six months after his acquisition of the claims and the gain represented therein would constitute short-term capital gain taxable as ordinary income and not long-term capital gain as contended by petitioner. Decision will be entered that there is a deficiency in income tax of $3,335.63 for the year 1946. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(g) Capital Losses. - (1) Limitation. - Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117. (2) Securities Becoming Worthless. - If any securities (as defined in paragraph (3) of this subsection) become worthless during the taxable year and are capital assets, the loss resulting therefrom shall, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets. * * *
SEC. 117. CAPITAL GAINS AND LOSSES. * * *
(e) Capital Loss Carry-Over. - (1) Method of computation. - If for any taxable year beginning after December 31, 1941, the taxpayer has a net capital loss, the amount thereof shall be a short-term capital loss in each of the five succeeding taxable years to the extent that such amount exceeds the total of any net capital gains of any taxable years intervening between the taxable year in which the net capital loss arose and such succeeding taxable year. For purposes of this paragraph a net capital gain shall be computed without regard to such net capital loss or to any net capital losses arising in any such intervening taxable years. (2) Rule for application of capital loss carryover from 1941. - The amount of the net short-term capital loss of the last taxable year beginning in 1941 (computed without regard to amounts treated as short-term capital losses from the preceding taxable year), which is not in excess of the net income for such taxable year, shall, to the extent of the net short-term capital gain for the succeeding taxable year (computed without regard to this paragraph), be a short-term capital loss of such succeeding taxable year.↩
2. (f) Retirement of Bonds, Etc. - For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.↩