LAWRENCE W. CARPENTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12872.   Promulgated January 13, 1948.

---

*Lee Loevinger, Esq.*, for the petitioner.
*T. A. Steele, Jr., Esq.*, for the respondent.

### OPINION.

HARLAN, *Judge*: The facts in this case pertaining to the first issue are adopted as stipulated.

The income tax return of petitioner for the taxable year 1942 was filed with the collector of internal revenue at St. Paul, Minnesota on March 15, 1943. It disclosed a gross income of $45,985.89 and claimed deductions of $10,217.37.

The income tax return of petitioner for the taxable year 1943 was filed with the collector of internal revenue at St. Paul, Minnesota, on March 15, 1944. It disclosed a total income of $54,959.92 and claimed deductions of $7,361.75.

On September 11, 1946, the Commissioner of Internal Revenue mailed his "preliminary statement" to petitioner and on October 28, 1946, he mailed a notice of deficiency to the petitioner.

These two documents pertained to a determination of deficiency by the Commissioner in petitioner's 1943 income tax, but a part of this deficiency resulted from a disallowance by the Commissioner of certain deductions which the petitioner had claimed in his 1942 return.

The deficiency notice sets up these adjustments to the 1942 income tax return as follows:

ADJUSTMENTS TO NET INCOME

*Year ended December 31, 1942*

| | | |
|---|---:|---:|
| Net income as disclosed by return | | $35,068.52 |
| Unallowable deductions and additional income: | | |
| (a) Disallowance of deduction for depreciation | $350.00 | |
| (b) Disallowance of deduction for separate maintenance payments | 4,200.00 | |
| (c) Disallowance of promotional expense | 1,000.00 | |
| Total additions | | 5,550.00 |
| Net income, adjusted | | $40,618.52 |

From the above statements it is obvious that the return for the calendar year 1943, even if all claimed deductions were allowed by the Commissioner, would disclose a larger income than would the return for the calendar year 1942, even if the Commissioner were to reject all its claimed deductions. Therefore, in the absence of fraud in the return of gross income by the petitioner for 1942 (and such a claim has not been intimated in this case), it becomes evident that this case falls under section 6 (a) of the Current Tax Payment Act of 1943, the pertinent parts of which read as follows:

In case the tax imposed by Chapter 1 of the Internal Revenue Code upon any individual * * * for the taxable year 1942 (determined without regard to this section * * *) is not greater than the tax for the taxable year 1943 (similarly determined), the liability of such individual for the tax imposed by such chapter for the taxable year 1942 shall be discharged as of September 1, 1943 * * *. In such case if the tax for the taxable year 1942 (determined without regard to this section * * *) is more than $50, the tax under such chapter for the taxable year 1943 shall be increased by an amount equal to 25 per centum of the tax for the taxable year 1942 (so determined) or the excess of such tax (so determined) over $50, whichever is the lesser.

The petitioner contends that the above section requires a determination of the tax for 1942 by the Commissioner; that the word "determined" as used in this section is synonymous with the word "assessed" as used in section 275 (a) of the Internal Revenue Code; and that, since there was no determination or assessment of the tax for 1942 by the Commissioner within three years after the filing of the return for 1942, the Commissioner is prevented by reason of the limitation provided by section 275 (a) from basing the determination of any deficiency in petitioner's return for 1943 upon any adjustment or determination of his 1942 return. Section 275 (a) of the code reads as follows:

The amount of income taxes imposed by this statute shall be assessed within three years after the return was filed and no proceeding in court without assess-

ment for the collection of such taxes shall be begun after the expiration of such period.

The respondent contends that the words "determined" used in section 6 (a) of the Current Tax Payment Act, *supra*, is limited to the technical use of that term by the Bureau of Internal Revenue and is not synonymous with "assessed." He contends that there is no statutory limitation upon the Bureau against a determination of a tax; that the collector of internal revenue has the right at any time to determine a tax or to examine and modify a tax return properly in his possession for the purpose of computing a tax on a subsequent year; and, finally, that the provision in section 6 (a) that "the tax imposed * * * for the taxable year 1942 shall be discharged as of September 1, 1943," in effect combined the taxes for these two years into an indivisible whole, so that the period allowed the Commissioner for the assessment of the tax for 1942 was the period of three years after the filing of the tax return for 1943.

Considerable clarity can be achieved in the disposition of the question before us by keeping in mind the income tax return under consideration. It is the 1943 return.

From the effective date of the Current Tax Payment Act of 1943 the petitioner no longer possessed the right to file a petition with the Tax Court for a redetermination of the 1942 income tax liability as such. That tax liability, with the operation of the Current Tax Payment Act, became discharged as of September 1, 1943. After that date there was no longer any purpose to be served by the statute of limitations controlling the assessment of the 1942 tax because the tax liability itself for that year was wiped out. Any taxpayer aggrieved by the Commissioner's computation of the amount equal to 25 per cent of the 1942 tax liability which the law directed should be added to the 1943 tax liability, retained his remedy for any error in the 1942 computation in the filing of a petition for a redetermination of the 1943 tax. In fact, that is just what the taxpayer herein has done. The amount which the Commissioner computed to be 25 per cent of the 1942 tax became an integral part of the 1943 tax liability and when the taxpayer would procure a redetermination of the 1943 tax he had an adequate and ample remedy.

Therefore, since the taxpayer had no right to a redetermination of the 1942 tax liability and since the Commissioner, after he had determined 25 per cent of the 1942 tax liability, could do nothing more towards the collection thereof than include such an amount in his determination and assessment of the 1943 tax, then there was obviously no purpose for the Commissioner or advantage for the taxpayer in the Commissioner making any assessment of the 1942 tax, even if he were empowered so to do. Hence, we can not agree with the petitioner that the word "determined" as used in section 6 (a) of the

Current Tax Payment Act was synonymous with "assessed." It follows that the limitations provided in section 275 (a) of the code, controlling the assessment of the tax, can not be extended as a control over the determination of 25 per cent of the 1942 tax liability.

We are impressed with the applicability of the reasoning in *Lord Forres*, 25 B. T. A. 154, to the facts in the case at bar. In that case the taxpayer's 1922 return reported a substantial loss which was carried forward as a deduction from the gross income for 1923. In determining the 1923 deficiency the Commissioner adjusted the loss claimed in the 1922 return after the statute of limitations had run against any determination of deficiency for 1922. The opinion says:

We are not impressed with the argument made on behalf of petitioner Lawson that respondent's action in redetermining the net loss for the year 1922, claimed as a deduction from petitioner's income for the year 1923, results in the indirect assessment of a deficiency against him for the year 1922, now barred by the statute of limitations. The statute has not run as to 1923, and it is for that year that respondent seeks to impose a tax. In computing petitioner's taxable income for the year 1923, it is respondent's duty to consider and determine all items and elements thereof, including the net loss carried forward from the preceding year. He is not limited by the 1922 return in determining the correct amount of that loss as it may affect the deficiency for 1923.

In the case at bar the Commissioner adjusted deductions claimed in the 1942 return, not for the purpose of determining a deficiency in the 1942 income tax, but to assess correctly the 1943 tax. It is our opinion that this procedure was correct and that he is not barred by the statute of limitations. The taxpayer herein has raised no issue as to the correctness of the adjustments.

The second issue involved herein, pertaining to petitioner's right to personal exemption as the head of a family, becomes an issue in this case in the following manner:

In his tax returns for both 1942 and 1943 petitioner claimed an exemption from taxable income of only $500 on the theory that he was a married man living apart from his family. However, in both returns he did claim as a deduction from taxable income $4,200 representing twelve payments of $350 each which he had made to his wife each month during these two years.

In his petition herein he contends that as to 1942 his entire claimed deduction of $4,200 should be recognized because of his basic contention that the statute of limitations had run against any change in the claimed deductions for that year. As to the 1943 deficiency which the Commissioner had determined, however, the petitioner alleges error therein in the Commissioner's refusal to allow him an exemption as head of a family after he had refused to allow the deductions from income of the amounts which he had paid his wife.

Inasmuch as we have held that the 1942 return may be examined for the purpose of determining allowable deductions therein, we have

overruled petitioner's contention that the entire $4,200 paid by him to his wife should be allowed as a deduction. We shall therefore also examine the 1942 return to determine whether or not the petitioner during that year should be allowed an exemption from his taxable income as the head and support of a family.

The Commissioner apparently recognized the appropriateness of our approach to this question, because in his brief he says:

It is respectfully submitted that this Court should rule that the petitioner is not entitled to the personal exemption granted to the head of a family during the calendar years 1942 and 1943.

The facts out of which this issue grew are as follows:

Petitioner and his former wife were married in 1919. They had two children, Vincent, born July 3, 1920, and Ann, born August 12, 1921.

Beginning in 1926 or 1927 petitioner with his wife and family resided in a home owned by petitioner on Humboldt Avenue, South, Minneapolis, Minnesota.

During 1934 petitioner and his wife separated and agreed to live separate and apart. Petitioner removed his belongings from his prior home and lived in separate quarters, four or five blocks distant from the home of his wife and children. He never revisited his former home and whatever communication he had with his wife was usually through the mediation of his parents.

During 1942 and 1943 petitioner contributed to his wife the sum of $350 per month. This money was given to petitioner's wife by the petitioner to support herself and children and take care of the house. The petitioner owned the furniture and fixtures in the house, as well as the house itself, and paid the taxes and insurance premiums thereon. No rent was charged for the furnished home. In addition to the above monthly payments, petitioner's wife was the beneficiary of a trust, the exact income from which is not in evidence.

During 1942 and 1943 petitioner's son Vincent was over 21 years of age and was on active duty with the Marine Corps of the United States. During part of 1942 petitioner's daughter Ann was in college. She became 21 years of age August 12, 1942. Some time in May 1943 petitioner's daughter Ann joined the WACS and served with them throughout the rest of the year.

On some occasions petitioner's daughter asked for advice from petitioner and he often gave her advice. The petitioner and his daughter met on irregular occasions away from petitioner's home, usually at a paternal grandparents' home or at some downtown luncheon engagement. On a few occasions petitioner advised his wife as to affairs connected with the family.

During 1942 and 1943 neither petitioner's wife nor either of his children were mentally or physically incapacitated.

Petitioner's wife supervised all the activities of the children when they were in school, signed their report cards, selected their studies, and bought their clothes. She bought food for the family and paid the gas, electric, and other bills of the household. In the event of illness the wife selected and called the doctor.

Petitioner and his former wife were divorced in 1944.

The pertinent provisions of the Internal Revenue Code is that part of section 25 (b) (1), which, during 1942 and 1943, read:

* * * There shall be allowed for the purposes of the normal tax and the surtax the following credits against net income:

(1) PERSONAL EXEMPTION.—In the case of a single person or a married person not living with husband or wife, a personal exemption of $500; or in the case of the head of a family or a married person living with husband or wife, a personal exemption of $1,200. * * *

During 1942 and 1943 petitioner was not living with his wife. Therefore his sole claim to an exemption in excess of $500 must be based, if at all, upon his status as "the head of a family." Section 29.25–4 of Regulations 111 sets forth the conditions that must exist to constitute a taxpayer the head of a family as follows:

The head of a family is an individual who (1) actually supports and maintains (2) in one household one or more individuals who (3) are closely connected with him by blood relationship or relationship by marriage or by adoption and (4) whose right to exercise family control and provide for these dependent individuals is based upon some moral or legal obligation. [Parentheses supplied.]

The record is completely devoid of any testimony as to the cause of the separation or as to who was at fault. Petitioner has therefore failed to prove any moral or common law legal obligation to support his wife as those terms have been construed for income tax purposes. *Claude S. Rucker*, 42 B. T. A. 32.

As to there being a statutory obligation upon petitioner to support his wife, section 1036 of Mason's Minnesota Statutes contains the following:

Every man who, without lawful excuse wilfully fails to furnish proper food, shelter, clothing or medical attendance to his wife, such wife being in destitute circumstances; * * *

Petitioner has failed to prove that he had no "lawful excuse" to live separate and apart from his wife during 1943 or that during that year his wife was in destitute circumstances. Therefore, having no relevant facts upon which we can find that petitioner was legally or morally obligated to support his wife, since the burden of proving that obligation rests upon the petitioner, from all of the evidence in the case we are unable to find that petitioner was legally obligated to support his wife within the meaning of the terms of the Commissioner's regulation. Consequently, during 1943 petitioner was not the head of a family because of his payments for his wife's upkeep.

During 1942 and 1943, furthermore, his son was on active duty with the United States Marines. We do not find that there was any moral or legal obligation on petitioner to support his son under these circumstances.

As to the daughter, however, the record discloses that her only home was with her mother during 1942 and that she lived with her mother at the homestead until May of 1943, when she entered the military service of the United States as a WAC, served through the remainder of that year, and was no longer maintained by petitioner. During 1942 and 1943 she was neither physically nor mentally handicapped. However, the petitioner is not claiming an exemption herein under section 25 (b) (2) of the code, which provides for a deduction from taxable income of $350 for the support of minor or incompetent dependents.

From the facts we conclude that the petitioner did have a right to exercise such family control over his 22-year old daughter as a normal father would exercise in such a case. The extent of such control, of course, would not be the same as that exercised by a parent over a minor daughter, but it certainly would extend to the right to give advice and expect that advice, when reasonable, to be followed. The testimony in this case shows that the petitioner did give his daughter advice and that occasionally she asked for his advice. His contributions to the upkeep of the home in which the adult daughter was living certainly vested in him a right to expect his daughter to respect his advice, and, as long as the daughter was unmarried and not vested with an income of her own, there was certainly a moral obligation on the part of the petitioner to assist in her support.

In *Percival Parrish*, 44 B. T. A. 144, this Court said: "The fact that petitioner was the sole support of the Newport household may itself be fairly regarded as giving him the right to exercise family control  *  *  *"

The very extensive acts constituting family control and guidance performed by the mother of petitioner's children, while probably somewhat more extensive than in some homes, are not at all unusual in normal family units where the husband and wife are living together. We can not find that these acts performed by petitioner's wife preclude the petitioner from retaining his *right* to exercise family control. Therefore, as to the daughter we find that the petitioner herein did hold the relationship as head of a family.

The statute fails to define "head of a family" and that question has always been considered one of fact, having regard, of course, for the regulations of the Commissioner. A few of the cases in this Court in which the taxpayer has been found not to be the head of a family are:

*Richard H. Baumbach*, 42 B. T. A. 88, where a widower lived in a home with a 26-year old son, a practicing dentist whose professional income was insufficient for his support; *Charlotte Hoskins*, 42 B. T. A 117, where the taxpayer furnished a home for herself and a 30-year old stenographer niece who was not completely self-supporting from her employment; and *Harry P. Kishner*, 42 B. T. A. 456, where an unmarried Chicago attorney maintained his parents in a home in Philadelphia because it was cheaper than to maintain them in Chicago.

A close examination of the facts at bar is very persuasive that none of the above or similar cases are controlling herein. This petitioner was not maintaining a home for a 30-year old partly employed niece, nor for a 26-year old practicing dentist son, nor was he maintaining a home apart from his own for no plausible reason other than the saving of expense. This petitioner was maintaining a home for his own unemployed daughter 21 years of age in a residence owned by petitioner, containing petitioner's own furniture and fixtures, and which had been the family homestead for 16 years prior to the taxable year. Nor was the maintenance of the residence apart from petitioner without plausible reason. The mere fact that petitioner and his wife had lived separate and apart in the same town for 9 years prior to the taxable year and that during that time he had never entered his own homestead would create a strong indication that there was a justifiable reason for the petitioner and his wife to live separate and apart, which, of course, would occasion the daughter, who had always lived with her mother, to live separate from her father. The fact that in the year following the taxable year, 1944, the Minnesota courts granted petitioner and his wife a divorce would put the stamp of judicial approval on our own conclusion that petitioner and his wife were justified in living separate and apart. The fact that we have found herein that the petitioner has failed to show who was at fault for the separation does not militate against the obvious conclusion that the 9-year separation and subsequent divorce had a real justification.

To cite a few cases in which the taxpayer has been granted an exemption as head of a family under the facts very comparable to those at bar, we refer to *Percival Parrish, supra*, and to *J. Brooks B. Parker*, 44 B. T. A. 369, in both of which cases the taxpayer maintained a home apart from his own residence for reasons considered justified by the Court, but for reasons no stronger than in the case at bar. See also *Meier S. Block*, 37 B. T. A. 945, a case almost on all fours with the case at bar in which the syllabus says:

Where a taxpayer, voluntarily separated from his wife, maintains two homes, living in one alone, and supporting and maintaining in the other his dependent wife and daughter over whom he exercises family control, he is the "head of a family" and is entitled to exemption as such.

Section 29.95–7 of Regulations 111 provides as follows:

If the status of the taxpayer changes during the taxable year, the personal exemption allowed by section 25 (b) (1) * * * will be apportioned according to the number of months during which the taxpayer occupied each status.

We therefore conclude that during 1942 and the first four months of 1943 the taxpayer was entitled to a personal exemption as the head of a family and for the last eight months of 1943 to the personal exemption of a married individual living apart from his wife.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

ARUNDELL, *J.*, did not participate in the consideration of or decision in this report.

VAN FOSSAN, *J.*, concurs only in the result.

---

HILL, *J.*, dissenting: I disagree with the holding indicated in the second paragraph of the headnote.