EMILY MARX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19736.   Promulgated December 30, 1949.

*Emily Marx, Esq., pro se.*
*Sheldon V. Ekman, Esq.,* for the respondent.

**OPINION.**

MURDOCK, *Judge*: The petitioner contends that the Commissioner had no statutory authority to determine a deficiency for 1943 which included $1,114.40, representing the difference between the tax liability of $4,388.66 for 1943 determined under chapter 1, and $5,503.06, the total liability determined under section 6 (b) of the Current Tax Payment Act of 1943.   Her argument is that a deficiency under section 271, for present purposes, is the excess of the tax imposed by chapter 1 for 1943 over the tax shown on the return for that year; the additional tax for 1943 is imposed not by chapter 1, but by section 6 (b) of the Current Tax Payment Act of 1943; section 6 (b) does not amend any provision of chapter 1 or add any provision to chapter 1, but is a separate statutory provision, not a part of chapter 1, which imposes additional taxes not imposed by chapter 1; the additional tax imposed by section 6 (b) is not referred to in the definition of a deficiency and is not a part of the deficiency; the jurisdiction of the Tax Court is limited, in cases like this, to the determination of a deficiency as defined in section 271; and, consequently, it has no jurisdiction over the additional tax imposed by section 6 (b), which can not form a part of a deficiency.

This Court has held that the tax under section 6 of the Current Tax Payment Act of 1943 is in its entirety a tax for 1943. *Lawrence W. Carpenter*, 10 T. C. 64. It also held in *Amy Guest*, 10 T. C. 750, that section 6 of the Current Tax Payment Act of 1943 did not amend chapter 1 of the Internal Revenue Code, but imposed a tax not imposed by chapter 1. That decision was reversed by the Court of Appeals for the Fifth Circuit, 175 Fed. (2d) 868, in which the court said the specific provisions of the statute "clearly demonstrate that the increase made by Section 6 (a) of the Current Tax Payment Act in the petitioner's income-tax liability for 1943 was part of her chapter-one tax for 1943."

Congress, in enacting the Current Tax Payment Act of 1943, intended generally to forgive rather than increase taxes. Its purpose was to have income taxes paid currently during the income year, instead of later, as previously. It forgave the taxes for 1942, so as to avoid the payment of taxes for two years during the year 1943, and it increased the taxes for 1943 by less than the taxes forgiven. A method of computation to accomplish these ends was provided in section 6. Congress stated in eight other sections of the Current Tax Payment Act of 1943 that it was amending the Internal Revenue Code, whereas it did not expressly state that section 6 was an amendment. It provided in section 6 (a) and also in section 6 (b) that "the tax under such chapter [chapter 1] for the taxable year 1943 shall be increased by" a specified amount. This language may not be entirely clear, but it was apparently intended to amend the tax-imposing provisions of chapter 1. "Increased" can mean that the thing itself, that is the tax imposed by chapter 1, is expanded and made larger to include, as an integral part thereof, something more than formerly. But it remains "the tax imposed by Chapter 1." Congress did not say that anything was imposed in addition to the tax imposed by chapter 1, but it said that the tax theretofore imposed by chapter 1 is to be increased, so that thereafter it shall be greater than it was previously. Furthermore, the increase, whether under section 6 (a) or 6 (b), represents tax imposed by chapter 1, since it is computed from the chapter 1 tax for 1942 and 1943. It seems unreasonable to suppose that Congress, in enacting the forgiveness feature of the Current Tax Payment Act in section 6, intended thereby to exclude some of the tax liability of a taxpayer from the computation of a deficiency or from the computation of a rebate, the definitions of which include the words "imposed by this chapter." Sec. 271. To hold otherwise would limit taxpayers' right to litigate in regard to the unforgiven portion of the 1942 tax included in the tax for 1943.

The conclusion has been reached that all of the tax liability under section 6 of the Current Tax Payment Act of 1943 is tax imposed by

chapter 1 for the purpose of the definition of a deficiency contained in section 271 of the code. This is contrary to views expressed by this Court in the *Guest* case, *supra*. The procedure followed by the Commissioner was in accordance with the code and the provisions of the Current Tax Payment Act of 1943, and, furthermore, the question of the running of the statute of limitations as to deficiency for 1942 is immaterial, since this case does not involve any deficiency for that year. *Lawrence W. Carpenter, supra.*

The petitioner complained throughout the hearing that she was subjected to unnecessary examinations and also that the determination of the Commissioner was arbitrary. The question of the jurisdiction of this Court to take any action under section 3631 of the Internal Revenue Code or under sections 5 (a) or 10 (e) of the Administrative Procedure Act need not be decided because the evidence does not show either that the petitioner was subjected to unnecessary examinations or that the determination of the Commissioner was arbitrary within the meaning of the Administrative Procedure Act. The petitioner lived for a part of the year in New Hampshire, conducting some business from her home there, and lived for the balance of the year in New York, where she had a regular business office. Apparently, one revenue agent attempted to make an examination at her home in New Hampshire, and then it was found necessary to have another agent go to her place of business in New York in an effort to complete the examination. The petitioner kept no regular books of account for her business transactions, but depended upon her check stubs for records of expenditures, and upon notations on the back of those stubs for receipts. The agent, being unable to reconcile her check stubs and notations on the backs thereof with her returns, and desiring to check further into her income and claimed deductions, asked in vain for bank statements and checks or receipted bills. He was not able to verify her claimed deductions. It appears that the petitioner was not cooperative, and even at the trial she showed some disposition to resist efforts of the Government to see her checks and other records. The petitioner can blame herself in large part for her difficulties. The Commissioner, frustrated in his efforts to learn enough about the items to determine that they were deductible, disallowed them for lack of substantiation. It does not appear that he acted arbitrarily within the meaning of any applicable law.

The petitioner contends that the period of limitation for assessment of any deficiency for 1943 expired on June 30, 1947, whereas the notice of deficiency was not mailed until May 24, 1948. This argument is based upon a mimeographed letter to the petitioner dated November 15, 1946, from the internal revenue agent in charge at Boston, in which he said he was returning for the petitioner's "files the

triplicate copy of Form 872, which you recently filed with this office, extending the statute of limitations to June 30, 1947 for the year ended December 31, 1943." The date June 30, 1947, obviously was mentioned in error, since the Form 872 referred to in the letter extended the statute of limitations to June 30, 1948, for the year ended December 31, 1943, as the petitioner had agreed and as the copy enclosed with the letter must have indicated to her. The mistake occurred because an employee failed to correct the date on an old form used as a letter of transmittal. The letter was not intended as an offer to change the existing agreement of the parties expressed in Form 872 and did not have the effect of shortening the period agreed to in Form 872. No reasonable person would have been misled by the mistake. The petitioner is trying to take advantage of the obvious error in this letter, but the Form 872 expressed the true and only agreement of the parties as to the extension of the statutory period for assessment. The petitioner and the Commissioner, by Form 872, agreed that the period of limitations applicable to the petitioner's tax liability for 1943 was extended to June 30, 1948. The notice of deficiency was mailed within that period and the statute of limitations has not run.

The petitioner argues that the agreement on Form 872 did not extend the period within which the Commissioner could disallow a credit for a dependent or the period within which he could determine that she owed an addition to the tax, for negligence, under section 293 (a). The agreement on Form 872 extended the period for all purposes. The addition to the tax under section 293 (a) is a part of the tax and is covered by the agreement. The credit for a dependent is one of the items involved in the computation of the tax and the consent applies to it also, although the question is rendered moot by the allowance herein of the credit for each year.

The petitioner had two young children. Their father did not support them. The petitioner supported both of them during 1942 and 1943. The Commissioner allowed a credit for a dependent as to one, but not as to Janet, the other. The petitioner had established a trust for Janet, but the income of the trust was not used during 1942 or 1943. The petitioner, like her husband, was liable for the support of Janet and, since she actually supported her, she is entitled to the dependency credit for 1942 and 1943.

The respondent concedes in his brief that the petitioner is entitled to office expenses in the amount of $2,150.03 for 1942 and $2,122.93 for 1943, which amounts were not allowed in determining the deficiency. The petitioner claims deductions for each year in larger amounts, but the evidence does not adequately support her contention. She paid $600 a year as rent for her offices in New York City and

$1,299.73 to her secretary as salary for 1943. The record does not justify allowance of the arbitrary amounts which she claims as deductions for rent for the space used by her as an office in her Alstead residence. She claims as printing the cost of printing a book. That might be the cost of goods sold, but it is not shown to have been an ordinary and necessary expense of her business for 1942 or 1943. The so-called filing fees appear to have been amounts which she advanced on behalf of and to be repaid by clients. Those unproven amounts, in the nature of advances or loans, are not shown to have been ordinary and necessary expenses of her business. Her "entertainment expenses" for 1942 included $286 for the board of her two riding horses, and her explanation in that connection does not show that those amounts were ordinary and necessary expenses of her business. A large part of the amounts claimed as entertainment represents the cost of groceries used in her own house, and the record does not justify a finding that those amounts were ordinary and necessary expenses of her business. She undoubtedly had some expenses for telephone and cable, but her method of keeping account of those expenditures is not reassuring and there is considerable doubt that the total amount which she claims was actually expended in connection with her business. She spent some money each year for expendable office supplies and similar items, but the record does not show how much. She probably had some expenses for transportation. The evidence which she presented as to all of her alleged expenses leaves much to be desired from the standpoint of accuracy and completeness. It fails to show how much money the petitioner spent and what she spent it for in many instances. A finding that her business expenses were in excess of the amounts conceded by the Commissioner is not justified by the record.

The amounts which she claimed for depreciation on office furniture and equipment appear to be in line with what she claimed and was allowed in previous years and, under all of the circumstances, reasonable within the meaning of the statute.

The evidence shows that the income from the summer rental of the Waldo Avenue property was $350 for 1942 and $1,325.75 for 1943. The petitioner admits that those amounts were received, but claims that they were received as income of a trust for her daughter and so reported upon the theory that she held the property in trust for her daughter. This property was the New York home of the petitioner and her family. The recorded title was in the name of the petitioner. One unrecorded deed took the title out of her name and another put it back in her name in the early part of 1942. The petitioner in all of those deeds appears in her individual capacity and not in the capacity of a fiduciary, although she wrote at some undisclosed time on the cover of the unrecorded deed dated May 21, 1942,

in blue pencil, "in trust for Janet House, a minor." The petitioner paid no rent for occupying the property and in all respects treated it as her own, except as above indicated. The record does not justify a finding that the New York home of the petitioner and her family or the summer rental therefrom was in law or in equity the property of her ten-year old daughter. There is no evidence of the terms of any trust pertaining to the property. It could not be held that the income of a trust, if any existed, was not taxable to the petitioner.

The $111.93 added to the petitioner's income for 1942 as an error does not represent any income which she received in that year.

The Commissioner disallowed $250 for 1942 and $100 for 1943 of larger amounts claimed by the petitioner as deductions for taxes. The largest items going to make up these amounts are estimated sales taxes. The petitioner's testimony to support these deductions is not entirely convincing. She undoubtedly paid some such taxes and it has been determined, following the principle of *Cohan* v. *Commissioner*, 39 Fed. (2d) 540, that $257 would be a proper deduction for 1942 and $125 for 1943.

The petitioner claims a deduction of $25 as a loss for 1942 and $4.50 as a loss for 1943. The only testimony is that she lost $25 in cash out of her brief case on May 2, 1942, and in 1943 she lost and never recovered a metal lunch box while traveling in the subway. The box was uninsured, was used every day, was two years old, and was worth about $4.50, although it cost more. Those losses were not due to theft or other casualty and are not deductible. Cf. *Waddell F. Smith*, 10 T. C. 701.

The Court has done its best with the poor record made by the petitioner, an attorney, acting as her own counsel. Her failure to prove facts is her own fault. The evidence does not show that the Commissioner erred in imposing the negligence penalty.

Reviewed by the Court.

*Decision will be entered under Rule 50.*