S. B Tressler v. Commissioner.
S. Tressler v. Commissioner
Docket No. 24654.
United States Tax Court
1951 Tax Ct. Memo LEXIS 340; 10 T.C.M. (CCH) 105; T.C.M. (RIA) 51031; January 26, 1951
*340 Held: 1. In determining the deficiency against petitioner for 1943, under the Current Tax Payment Act of 1943, the respondent is not barred by the provisions of section 275 (a) of the Internal Revenue Code from adjusting petitioner's income for 1942. 2. The respondent did not err in determining that the amount of $13,661.70 received by petitioner in 1942 from Tressler Coal Mining Co. represented income from dividends rather than from royalties. 3. The respondent's determination that petitioner received additional income as salary from Tressler Coal Mining Co. for the years 1942 and 1943 in the respective amounts of $6,229.21 and $5,000 is sustained for failure of petitioner to offer any proof with respect to same. 4. For failure of proof, the disallowance by respondent of the following claimed deductions is sustained: (a) The sum $350of for furnishing the principal support of petitioner's son in the year 1942. (b) The sum of $350 in each of the years 1942 and 1943 for furnishing the principal support of petitioner's mother in those years. (c) The sum of $425 claimed as charitable contributions made during the year 1942. Joseph A. Fitzsimmons, Esq., for the petitioner. Hugh F. Culverhouse, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves a deficiency in income and victory tax for the taxable year 1943 in the amount of $7,693.48. The year 1942 is involved because of the Current Tax Payment Act of 1943. The issues *342 presented are: 1. Did the respondent err by disallowing a credit of $350 claimed by petitioner for allegedly furnishing the principal support of his son during the year 1942? 2. Did the respondent err by disallowing a credit of $350 claimed by petitioner for allegedly furnishing the principal support of his mother during the years 1942 and 1943? 3. Did the respondent err in determining that the amount of $13,661.70 received by the petitioner in 1942 from Tressler Coal Mining Co. represented income from dividends (distribution of earnings) rather than income from royalties? 4. Did the respondent err in determining that the petitioner received additional income as salary from Tressler Coal Mining Co. for the years 1942 and 1943 in the amounts of $6,229.21 and $5,000 respectively? 5. Did the respondent err by disallowing a deduction of $425 claimed by petitioner as charitable contributions during the year 1942? 6. Did the respondent err in determining that he was not precluded by the expiration of any statutory period of limitations from assessing and collecting the additional income taxes determined to be due from the petitioner for the taxable year 1943? The case was submitted *343 upon oral testimony and exhibits. Findings of Fact Petitioner is an individual residing at Reno, Nevada. His return for the period involved was filed with the collector of internal revenue for the district of West Virginia, at Parkersburg, West Virginia. In 1939 petitioner and his former wife entered into a separation agreement which was preliminary to a final divorce proceeding. That agreement provided, inter alia, that petitioner was to pay the sum of $25 per month for a period of three years for the support of their son, George W. Tressler. During the year 1942 the son resided with his mother, where his room and meals were furnished him. During 1942 petitioner paid his son the sum of $25 monthly, through November 1942, when the agreement expired. At that time petitioner gave his son $50 extra. During the years 1942 and 1943 petitioner $50contributed per month to the support of his aged mother, Katherine Tressler, who made her home with petitioner's sister in Summerfield, Pennsylvania. Petitioner's two brothers contributed unspecified amounts to the support of their mother. At some time prior to 1933, certain coal lands known as the Tressler Mine were owned by Tressler *344 Coal Co. This mine property was sold in 1935 under a deed of trust to Peoples-Pittsburgh Trust Co. and John S. C. Herron, trustees. On March 16, 1936 the trustees conveyed the Tressler Mine property to one Frank Marra for the sum of $7,000. Frank Marra was a mere agent of Tressler Coal Mining Co., a separate and distinct corporation from Tressler Coal Co. The $7,000 used to make the purchase was derived in part, if not in whole, from the sale of shares of the capital stock of Chrysler Corp. registered in the name of Tressler Coal Mining Co. At the time of the purchase of the Tressler Mine property in the name of Frank Marra, Peoples-Pittsburgh Trust Co. had obtained a judgment against petitioner in the approximate amount of $12,000, which judgment was not satisfied until sometime in 1941 or 1942. On May 13, 1937 Frank Marra and his wife executed a deed conveying the Tressler Mine property to Tressler Coal Mining Co. for a recited consideration of $7,500. The deed was recorded on October 7, 1946. The deed was prepared by E. Wayne Talbott, an attorney for such company and also for petitioner. Petitioner did not participate in the execution of the deed of May 13, 1937. He was then confined, *345 during the period December 1936 to April 29, 1939, in a Federal institution in Lewisburg, Pennsylvania. On May 14, 1937 a special meeting of the stockholders of Tressler Coal Mining Co. was held. The minutes of that meeting state in part as follows: "There were present, H. W. Tressler and B. M. Compton, in person, and W. Bruce Talbott by proxy, constituting all of the outstanding stock of the Tressler Coal Mining Company. * * *
"It appearing that S. B. Tressler, who formerly owned twenty-nine shares of the capital stock of the said corporation has heretofore transferred all his stock, thereby vacating his office as president of said corporation, and as a director thereof and that it is necessary that the said stockholders should elect new directors and reorganize the said organization, and, therefore, on motion duly made and carried the stockholders proceeded to elect directors of said corporation, and the following named persons, each having received votes representing a majority of the whole number of shares of stock represented at said meeting, were declared duly elected directors of said corporation, to serve for one year, or until their successors should be duly elected *346 and qualified, to-wit: H. W. Tressler W. Bruce Talbott B. M. Compton * * *
"On further motion duly made and carried, it was ordered that the said corporation do purchase from Frank Marra all the land, coal and mining rights and privileges, heretofore sold to the said Frank Marra by the Peoples Pittsburgh Trust Company, a corporation, and John S. C. Herron, trustee under the will of J. B. Findley, Deceased, dated March 16, 1936, which said properties are known as 'Tressler Coal Company Properties' situate in Bear Mountain of Pleasant District of Barbour County, West Virginia, for the sum of $7,500.00, and that deeds to said properties be accepted and duly recorded in the Barbour County Court Clerk's Office. "Upon motion further made and duly carried, it is ordered that a mortgage or deed of trust be executed by this company upon all the properties, consisting of coal lands and mining equipment, in Taylor County and Barbour County, West Virginia, which properties are known as the Barry Mining Property, in Taylor County, West Virginia, and the Tressler Coal Company Property in Barbour County, West Virginia, to secure the payment of indebtedness in the amount of twenty-five *347 thousand dollars ($25,000.00), represented by ten notes in the amount of twenty-five hundred dollars each, to the First National Bank of Apollo, Apollo, Pennsylvania, and that president of said corporation be authorized to execute and acknowledge said deed of trust." On September 28, 1946, Tressler Coal Mining Co. conveyed the Tressler Mine property to Wm. T. George, Sr. by a deed executed by petitioner as president. The deed contained the corporate seal of the company and was recorded on October 7, 1946. This deed recites consideration of $10 and other good and valuable considerations, cash in hand paid. Petitioner filed his individual income tax returns for the year 1942 on March 6, 1943, and for 1943 on March 14, 1944. Petitioner filed forms 872, "Consent Fixing Period of Limitation upon Assessment of Income and Profits Tax," ultimately extending the time for assessment of tax for the year 1943 to June 30, 1949. The respondent duly mailed to petitioner a notice of deficiency of income tax liability for the year 1943 on May 27, 1949. Opinion The first issue involves the propriety of respondent's disallowance of a credit of $350 claimed by petitioner in 1942 for furnishing *348 the principal support of his son. The record establishes that during the year 1942 the son, then under 18 years of age, lived with his mother, who was divorced from petitioner. Pursuant to a separation agreement, petitioner agreed to pay the sum of $25 per month to his son for a period of three years. The agreement expired in November, 1942. During the year 1942 petitioner contributed the sum of $325 to his son. The record is silent as to the amount spent for food, lodging or clothing for petitioner's son. It does not appear from whom he drew the major part of the cost of his support for the year 1942. Since he lived with his mother, the greater part of his support may have been furnished by her. Section 25 (b) (2) (A) of the Internal Revenue Code, applicable to the year 1942, provides in substance for a credit of $350 for each dependent receiving his chief support from the taxpayer, if such dependent is under 18 years of age, or is incapable of self-support because mentally or physically defective. Regulations 111, section 29.25-6, interpreting such statute, provides in part as follows: "The credit is based upon actual financial dependency and not mere *349 legal dependency. It may accrue to a taxpayer who is not the head of a family. But a father whose children receive half or more of their support from a trust fund or other separate source is not entitled to the credit. * * *" The respondent's regulation interpreting the phrase "chief support" as meaning more than one-half the support has long been recognized as a fair interpretation and as having received legislative approval. Alfred E. Fuhlage, 32 B.T.A. 222; Eleanor L. Mack, 37 B.T.A. 1101, 1105. We accordingly hold that the proof is insufficient to determine that petitioner is entitled to a credit in 1942 of the amount of $350 as support furnished to his son. The second issue involves a similar question as to the disallowance of a claimed credit of $350 for furnishing the principal support to petitioner's aged mother in 1942 and 1943. The record establishes that during the years 1942 and 1943 petitioner's mother lived with her daughter, a sister of petitioner, in Summerfield, Pennsylvania. It also appears that petitioner's two brothers contributed unspecified amounts to the support and maintenance of their mother. There is no showing as to the *350 actual cost of her support or whether the $50 contributed monthly by petitioner constituted more than one-half the cost of such support. To entitle petitioner to a credit for dependency of his mother, it was incumbent on petitioner to bring himself within the provisions of section 25 (b) (2) (A) of the code, and Regulations 111, section 29.25-6, which we have discussed in the preceding issue. We think that petitioner has failed to carry the burden. We accordingly hold that the respondent did not err in disallowing petitioner the claimed deduction in the respective years 1942 and 1943, as furnishing the chief support of his mother. The next issue presents the question whether the respondent erred in determining that the amount of $13,661.70 received by petitioner in 1942 from Tressler Coal Mining Co. represented income from dividends (distribution of earnings) rather than income from royalties. In his 1942 return petitioner reported the amount of $13,661.70 as gross income from "Coal Royalty" and claimed a deduction for depletion in the amount of $4,981.50. The respondent determined that the amount represented income from dividends (distribution of earnings) and disallowed the claimed *351 deduction of depletion. The determination of this issue involves the question of whether petitioner was the owner in fee of the coal mining property known as the "Tressler Mine" in the taxable year 1942. It is the contention of petitioner that he was the owner of such property; that he furnished the consideration for the purchase of the property from the trustees, and that title was taken in the name of Marra, as his agent; and that he had an oral agreement with Tressler Coal Mining Co. to operate the mine on a royalty basis. It is the position of the respondent that the documentary proof conclusively shows that the fee title to the mine property in question was in Tressler Coal Mining Co. The record establishes that Tressler Coal Co. was organized in 1923 for the purpose of operating the Tressler Coal Mine. In 1935 it defaulted on its outstanding indebtedness, and its properties were sold under a deed of trust to Peoples-Pittsburgh Trust Co. of Pittsburgh, Pennsylvania, which obtained a judgment against the petitioner for the approximate amount of $12,000. This judgment remained unsatisfied until 1941 or 1942. On March 16, 1936, the Peoples-Pittsburgh Trust Co. sold the Tressler *352 Mine property to Frank Marra for $7,000. Marra concededly was a "straw man" in the transaction. The funds used to pay the consideration were derived in part, if not entirely, from the sale of capital stock of Chrysler Corp. registered in the name of Tressler Coal Mining Co. On May 13, 1937, while petitioner was confined to a Federal institution, Frank Marra and his wife executed a deed conveying the property in question to Tressler Coal Mining Co., a separate corporation from Tressler Coal Co. which originally operated the property. The deed was prepared by E. Wayne Talbott, who was the attorney for the company. The deed was not recorded until October7, 1946. There is no satisfactory evidence to show who had custody of the deed between the time of its execution and the time it was recorded, nor is there any explanation why it was not previously recorded. On September 28, 1946, Tressler Coal Mining Co. by deed conveyed the property to Wm. T. George, Sr. This deed was executed by petitioner as president, and was recorded on the same date as the aforementioned deed from Marra and his wife to the corporation. Petitioner has endeavored to overcome this record proof of ownership by his *353 own testimony and the testimony of Marra and one Talbott, the attorney who handled the transaction. The testimony of Marra was vague, indefinite and uncertain. As to many of the material facts, he had no recollection. His testimony is of little importance except for establishing the fact that he had no legal or other interest in the property and was a mere agent. The testimony of Talbott, the attorney, is likewise hazy. Many of the material details he could not recall. We think his testimony tends to support the documentary proof that the corporation and not the petitioner was the owner of the property. The testimony of petitioner was not persuasive. He was evasive and his testimony contradictory. Wholly aside from the fact that during part of the period involved herein petitioner was confined to a Federal institution, but based on our observation of him as a witness, we are disinclined to give full credence to his testimony. The fact that at the time the property was purchased in the name of a "straw man" he had an unsatisfied judgment of approximately $12,000 against him, indicates his inability to purchase the property in question or that he was endeavoring to secrete his property *354 from creditors. That the documentary proof contradicts his testimony in this proceeding is the result of his own choosing. We are, therefore, not disposed to accept his testimony as establishing his ownership of the Tressler Mine in the taxable periods involved. We conclude that in the taxable periods involved the Tressler Mine property belonged to Tressler Coal Mining Co. and not to petitioner. The respondent did not err in taxing the sum of $13,661.70 as a dividend received by petitioner in 1942 rather than income from royalties. Petitioner was properly denied any depletion deduction thereon. Issue 4, involving the question whether the respondent erred in determining that petitioner received additional income as salary from Tressler Coal Mining Co. for 1942 and 1943 in the respective amounts of $6,229.21 and $5,000, and Issue 5, involving the question whether the respondent erred in disallowing a deduction of $425 claimed as charitable contributions during 1942, require no discussion since petitioner concedes, on brief, that "due to serious oversight and mistake" no proof was offered with respect to these issues at the hearing of this proceeding. For failure of proof, the respondent's *355 determinations respecting these two issues are sustained. The final issue presents the question whether the respondent erred in determining that he was not precluded by the expiration of any statutory period of limitations from assessing and collecting the additional income taxes determined to be due by and owing from the petitioner for the taxable year 1943. Petitioner contends that the respondent is without authority to assess a deficiency for the year 1942 after the expiration of the three-year period prescribed in section 275 (a) of the Internal Revenue Code. The deficiency notice on which the instant proceeding is predicated assesses a deficiency for 1943 and not for 1942. By duly executed forms 872, "Consent Fixing Period of Limitation upon Assessment of Income and Profits Tax," the ultimate time for assessment of tax for the year 1943 was extended to June 30, 1949. On May 27, 1949, the respondent duly mailed to the petitioner a notice of income tax liability for 1943. In computing the tax liability of petitioner, the respondent made certain adjustments in petitioner's reported income for 1942 and, in accordance with section 6 (b) of the Current Tax *356 Payment Act of 1943, determined the correct tax liability of petitioner for the year 1943. Since the respondent has not determined a deficiency against petitioner for the year 1942, we assume that the position of the petitioner is that the respondent was barred by section 275 (a) in making any adjustments to the 1942 income, inasmuch as the deficiency notice here involved was mailed more than three years after the 1942 return was filed. Lawrence W. Carpenter, 10 T.C. 64; William W. Todd, 10 T.C. 655; Fred B. Snite, 10 T.C. 523, affd., 177 Fed. (2d) 819, on another issue. We hold with the respondent on the issue of the statute of limitations. Decision will be entered for the respondent.