S. B. Tressler v. Commissioner.
S. Tressler v. Commissioner
Docket No. 24654.
United States Tax Court
1952 Tax Ct. Memo LEXIS 153; 11 T.C.M. (CCH) 716; T.C.M. (RIA) 52222; June 30, 1952
*153 Held: 1. In determining the deficiency against petitioner for 1943, under the Current Tax Payment Act of 1943, the respondent is not barred by the provisions of section 275(a) of the Internal Revenue Code from adjusting petitioner's income for 1942. 2. The respondent did not err in determining that the amount of $13,661.70 received by petitioner in 1942 from Tressler Coal Mining Co. represented income from dividends rather than from royalties. 3. The respondent's determination that petitioner received additional income as salary from the Tressler Coal Mining Co. for 1942 and 1943 in the respective amounts of $6,229.21 and $5,000 is sustained. 4. Petitioner is entitled to a deduction of the sum of $6,229.21 in 1942 and the sum of $5,000 in 1943 as expenditures made by him for and on behalf of the Tressler Coal Mining Co. 5. Petitioner is entitled to a deduction of the amount of $25 as a charitable contribution made during the year 1942. 6. For failure of proof, the disallowance by respondent of the following claimed deductions is sustained: (a) The sum of $350 contributed in 1942 to the support of petitioner's son. (b) The sum of $350 contributed *154 in each of the years 1942 and 1943 for the support of petitioner's mother. Joseph A. Fitzsimmons, Esq., for the petitioner. Robert F. O'Malley, *155 Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion LEMIRE, Judge: This proceeding involves a deficiency in income and victory tax for the taxable year 1943 in the amount of $7,693.48. The year 1942 is involved because of the Current Tax Payment Act of 1943. On May 16, 1951, this Court entered its order vacating its opinion entered herein on January 26, 1951, and the decision thereon entered on January 29, 1951, and restoring this proceeding to the calendar for further hearing, limited to the receipt of proof under the assignments of error set forth in subparagraphs (b), (c), (d), (h) and (i) of paragraph 4 of the petition. The issues are: 1. Did the respondent err by disallowing a credit of $350 claimed by petitioner for allegedly furnishing the principal support of his son during the year 1942? 2. Did the respondent err by disallowing a credit of $350 claimed by petitioner for allegedly furnishing the principal support of his mother during the years 1942 and 1943? 3. Did the respondent err in determining that the amount of $13,661.70 received by the petitioner in 1942 from Tressler Coal Mining Co. represented income from dividends (distribution *156 of earnings) rather than income from royalties? 4. Did the respondent err in determining that the petitioner received additional income as salary from Tressler Coal Mining Co. for the years 1942 and 1943 in the amounts of $6,229.21 and $5,000, respectively; and 5. Are those amounts deductible as expenses incurred and paid by him for and on behalf of the Tressler Coal Mining Co. in those respective years? 6. Did the respondent err by disallowing a deduction of $425 claimed by petitioner as charitable contributions during the year 1942? 7. Did the respondent err in determining that he was not precluded by the expiration of any statutory period of limitations from assessing and collecting the additional income taxes determined to be due from the petitioner for the taxable year 1943? Our former opinion is reinstated and incorporated herein with respect to all issues except as to those additional assignments of error set forth in our order of May 16, 1951. Additional findings of fact and opinion appearing herein with respect to the assignments of error set forth in subparagraphs (b), (c), (d), (h) and (i) of paragraph 4 of the petition are based on the supplemental record made *157 on the further hearing had herein. Findings of Fact Petitioner is an individual residing at Reno, Nevada. His return for the period involved was filed with the collector of internal revenue for the district of West Virginia, at Parkersburg, West Virginia. In 1939 petitioner and his former wife entered into a separation agreement which was preliminary to a final divorce proceeding. That agreement provided, inter alia, that petitioner was to pay the sum of $25 per month for a period of three years for the support of their son, George W. Tressler. During the year 1942 the son resided with his mother, where his room and meals were furnished him. During 1942 petitioner paid his son the sum of $25 monthly, through November 1942, when the agreement expired. At that time petitioner gave his son $50 extra. During the years 1942 and 1943 petitioner contributed $50 per month to the support of his aged mother, Katherine Tressler, who made her home with petitioner's sister in Summerfield, Pennsylvania. Petitioner's two brothers contributed unspecified amounts to the support of their mother. At some time prior to 1933, certain coal lands known as the Tressler Mine were owned by Tressler *158 Coal Co. This mine property was sold in 1935 under a deed of trust to Peoples-Pittsburgh Trust Co. and John S. C. Herron, trustees. On March 16, 1936, the trustees conveyed the Tressler Mine property to one Frank Marra for the sum of $7,000. Frank Marra was a mere agent of Tressler Coal Mining Co., a separate and distinct corporation from Tressler Coal Co. The $7,000 used to make the purchase was derived in part, if not in whole, from the sale of shares of the capital stock of Chrysler Corp. registered in the name of Tressler Coal Mining Co. At the time of the purchase of the Tressler Mine property in the name of Frank Marra, Peoples-Pittsburgh Trust Co. had obtained a judgment against petitioner in the approximate amount of $12,000, which judgment was not satisfied until sometime in 1941 or 1942. On May 13, 1937, Frank Marra and his wife executed a deed conveying the Tressler Mine property to Tressler Coal Mining Co. for a recited consideration of $7,500. The deed was recorded on October 7, 1946. The deed was prepared by E. Wayne Talbott, an attorney for such company and also for petitioner. Petitioner did not participate in the execution of the deed of May 13, 1937. He was then *159 confined, during the period December 1936 to April 29, 1939, in a federal institution in Lewisburg, Pennsylvania. On May 14, 1937, a special meeting of the stockholders of Tressler Coal Mining Co. was held. The minutes of that meeting state in part as follows: "There were present, H. W. Tressler and B. M. Comption, in person, and W. Bruce Talbott by proxy, constituting all of the outstanding stock of the Tressler Coal Mining Company. * * *
"It appearing that S. B. Tressler, who formerly owned twenty-nine shares of the capital stock of the said corporation has heretofore transferred all his stock, thereby vacating his office as president of said corporation, and as a director thereof and that it is necessary that the said stockholders should elect new directors and reorganize the said organization, and, therefore, on motion duly made and carried the stockholders proceeded to elect directors of said corporation, and the following named persons, each having received votes representing a majority of the whole number of shares of stock represented at said meeting, were declared duly elected directors of said corporation, to serve for one year, or until their successors should *160 be duly elected and qualified, to-wit: "H. W. Tressler "W. Bruce Talbott "B. M. Compton * * *
"On further motion duly made and carried, it was ordered that the said corporation do purchase from Frank Marra all of the land, coal and mining rights and privileges, heretofore sold to the said Frank Marra by the Peoples Pittsburgh Trust Company, a corporation, and John S. C. Herron, trustee under the will of J. B. Findley, Deceased, dated March 16, 1936, which said properties are known as "Tressler Coal Company Properties" situate in Bear Mountain of Pleasant District of Barbour County, West Virginia, for the sum of $7500.00, and that deeds to said properties be accepted and duly recorded in the Barbour County Court Clerk's Office. "Upon motion further made and duly carried, it is ordered that a mortgage or deed of trust be executed by this company upon all of the properties, consisting of coal lands and mining equipment, in Taylor County and Barbour County, West Virginia, which properties are known as the Barry Mining Property. in Taylor County, West Virginia, and the Tressler Coal Company Property in Barbour County, West Virginia, to secure the payment of indebtedness in *161 the amount of twenty-five thousand dollars ($25,000.00), represented by ten notes in the amount of twenty-five hundred dollars each, to the First National Bank of Apollo, Apollo, Pennsylvania, and that president of said corporation be authorized to execute and acknowledge said deed of trust." On September 28, 1946, Tressler Coal Mining Co., conveyed the Tressler Mine property to Wm. T. George, Sr., by a deed executed by petitioner as president. The deed contained the corporate seal of the company and was recorded on October 7, 1946. This deed recites consideration of $10 and other good and valuable considerations, cash in hand paid. During the years 1942 and 1943, the petitioner was president of the Tressler Coal Mining Co. which was engaged in operating two mines in those years. One of the mines was located at Flemington and the other at Brownton in West Virginia. Petitioner purchased all of the supplies required for the operation of the two mines. On account of shortages due to the war petitioner had to travel to distant cities to secure materials which local suppliers were unable to furnish. The petitioner estimated he was required to be away from home in quest of supplies on *162 an average of four days a week. He used his personal automobile on these trips. At times the corporation advanced funds to cover the supplies to be purchased and the expenses of petitioner incurred on such trips, and at times he used his own funds and was later reimbursed by the corporation. Petitioner did not keep separate accounts of the expenditures for supplies purchased and the amounts which he expended for meals, lodging, gasoline, oil, tires, tubes and repairs to his car on his trips away from home. During the year 1944 the office of the corporation, where its books were kept, was unlawfully entered and the books removed or destroyed and were not available to the petitioner at the trial of this proceeding. During the years 1942 and 1943 the petitioner received the respective sums of $6,229.21 and $5,000 from the Tressler Coal Mining Co. On its income tax returns for 1942 and 1943 the corporation claimed these respective sums as deductions representing travel expenses of its president and the same were allowed by the respondent. On his individual tax returns for 1942 and 1943, petitioner did not report the receipt of the respective amounts of $6,229.21 and $5,000. In determining *163 his deficiency for the taxable year 1943, the respondent added the sum of $6,229.21 in 1942 and $5,000 in 1943 to petitioner's gross income as additional salary received from the Tressler Coal Mining Co. In 1942 the petitioner expended the amount of $6,229.21 and in 1943 he expended the amount of $5,000 for and on behalf of the Tressler Coal Mining Co. On the petitioner's income tax return for 1942 a deduction of $425 was claimed as contributions. The respondent disallowed the entire amount for lack of substantiation. In 1942 the petitioner made gifts of approximately $200 to each of his widowed nieces. He also made a contribution to the Salvation Army. The petitioner's return for 1942 discloses a net income of $20,377.20. Petitioner contributed to the Salvation Army, a recognized charity, the sum of $25 in the year 1942. Petitioner filed his individual income tax returns for the year 1942 on March 6, 1943, and for 1943 on March 14, 1944. Petitioner filed forms 872, "Consent Fixing Period of Limitation upon Assessment of Income and Profits Tax," ultimately extending the time for assessment of tax for the year 1943 to June 30, 1949. The respondent duly mailed to petitioner a *164 notice of deficiency of income tax liability for the year 1943 on May 27, 1949. Opinion The first issue involves the propriety of respondent's disallowance of a credit of $350 claimed by petitioner in 1942 for furnishing the principal support of his son. The record establishes that during the year 1942 the son, then under 18 years of age, lived with his mother, who was divorced from petitioner. Pursuant to a separation agreement, petitioner agreed to pay the sum of $25 per month to his son for a period of three years. The agreement expired in November 1942. During the year 1942 petitioner contributed the sum of $325 to his son. The record is silent as to the amount spent for food, lodging or clothing for petitioner's son. It does not appear from whom he drew the major part of the cost of his support for the year 1942. Since he lived with his mother, the greater part of his support may have been furnished by her. Section 25(b)(2)(A) of the Internal Revenue Code, applicable to the year 1942, provides in substance for a credit of $350 for each dependent receiving his chief support from the taxpayer, if such dependent is under 18 years of age, or is incapable *165 of self-support because mentally or physically defective. Regulations 111, section 29.25-6, interpreting such statute, provides in part as follows: "The credit is based upon actual financial dependency and not mere legal dependency. It may accrue to a taxpayer who is not the head of a family. But a father whose children receive half or more of their support from a trust fund or other separate source is not entitled to the credit. * * *" The respondent's regulation interpreting the phrase "chief support" as meaning more than one-half the support has long been recognized as a fair interpretation and as having received legislative approval. Alfred E. Fuhlage, 32 B.T.A. 222; Eleanor L. Mack, 37 B.T.A. 1101, 1105. We accordingly hold that the proof is insufficient to determine that petitioner is entitled to a credit in 1942 of the amount of $350 as support furnished to his son. The second issue involves a similar question as to the disallowance of a claimed credit of $350 for furnishing the principal support to petitioner's aged mother in 1942 and 1943. The record establishes that during the years 1942 and 1943 petitioner's mother lived with her daughter, *166 a sister of petitioner, in Summerfield, Pennsylvania. It also appears that petitioner's two brothers contributed unspecified amounts to the support and maintenance of their mother. There is no showing as to the actual cost of her support or whether the $50 contributed monthly by petitioner constituted more than one half the cost of such support. To entitle petitioner to a credit for dependency of his mother, it was incumbent on petitioner to bring himself within the provisions of section 25(b)(2)(A) of the code, and Regulations 111, section 29.25-6, which we have discussed in the preceding issue. We think that petitioner has failed to carry the burden. We accordingly hold that the respondent did not err in disallowing petitioner the claimed deduction in the respective years 1942 and 1943, as furnishing the chief support of his mother. The next issue presents the question whether the respondent erred in determining that the amount of $13,661.70 received by petitioner in 1942 from Tressler Coal Mining Co. represented income from dividends (distribution of earnings) rather than income from royalties. In his 1942 return petitioner reported the amount of $13,661.70 as gross income from *167 "Coal Royalty" and claimed a deduction for depletion in the amount of $4,981.50. The respondent determined that the amount represented income from dividends (distribution of earnings) and disallowed the claimed deduction of depletion. The determination of this issue involves the question of whether petitioner was the owner in fee of the coal mining property known as the "Tressler Mine" in the taxable year 1942. It is the contention of petitioner that he was the owner of such property; that he furnished the consideration for the purchase of the property from the trustees, and that title was taken in the name of Marra, as his agent; and that he had an oral agreement with Tressler Coal Mining Co. to operate the mine on a royalty basis. It is the position of the respondent that the documentary proof conclusively shows that the fee title to the mine property in question was in Tressler Coal Mining Co. The record establishes that Tressler Coal Co. was organized in 1923 for the purpose of operating the Tressler Coal Mine. In 1935 it defaulted on its outstanding indebtedness, and its proprties were sold under a deed of trust to Peoples-Pittsburgh Trust Co. of Pittsburgh, Pennsylvania, *168 which obtained a judgment against the petitioner for the approximate amount of $12,000. This judgment remained unsatisfied until 1941 or 1942. On March 16, 1936, the Peoples-Pittsburgh Trust Co. sold the Tressler Mine property to Frank Marra for $7,000. Marra concededly was a "straw man" in the transaction. The funds used to pay the consideration were derived in part, if not entirely, from the sale of capital stock of Chrysler Corp. registered in the name of Tressler Coal Mining Co. On May 13, 1937, while petitioner was confined to a federal institution, Frank Marra and his wife executed a deed conveying the property in question to Tressler Coal Mining Co., a separate corporation from Tressler Coal Co. which originally operated the property. The deed was prepared by E. Wayne Talbott, who was the attorney for the company. The deed was not recorded until October 7, 1946. There is not satisfactory evidence to show who had custody of the deed between the time of its execution and the time it was recorded, nor is there any explanation why it was not previously recorded. On September 28, 1946, Tressler Coal Mining Co. by deed conveyed the property to Wm. T. George, Sr. This deed was executed *169 by petitioner as president, and was recorded on the same date as the aforementioned deed from Marra and his wife to the corporation. Petitioner has endeavored to overcome this record proof of ownership by his own testimony and the testimony of Marra and one Talbott, the attorney who handled the transaction. The testimony of Marra was vague, indefinite and uncertain. As to many of the material facts, he had no recollection. His testimony is of little importance except for establishing the fact that he had no legal or other interest in the property and was a mere agent. The testimony of Talbott, the attorney, is likewise hazy. Many of the material details he could not recall. We think his testimony tends to support the documentary proof that the corporation and not the petitioner was the owner of the property. The testimony of petitioner was not persuasive. He was evasive and his testimony contradictory. Wholly aside from the fact that during part of the period involved herein petitioner was confined to a federal institution, but based on our observation of him as a witness, we are disinclined to give full credence to his testimony. The fact that at the time the property was purchased *170 in the name of a "straw man" he had an unsatisfied judgment of approximately $12,000 against him, indicates his inability to purchase the property in question or that he was endeavoring to secrete his property from creditors. That the documentary proof contradicts his testimony in this proceeding is the result of his own choosing. We are, therefore, not disposed to accept his testimony as establishing his ownership of the Tressler Mine in the taxable periods involved. We conclude that in the taxable periods involved the Tressler Mine property belonged to Tressler Coal Mining Co. and not to petitioner. The respondent did not err in taxing the sum of $13,661.70 as a dividend received by petitioner in 1942 rather than income from royalties. Petitioner was properly denied any depletion deduction thereon. Issues 4 and 5 are related and will be treated together. Issue 4 presents the question whether the respondent erred in determining that the petitioner received additional income as salary in 1942 and 1943 in the respective amounts of $6,229.21 and $5,000 from the Tressler Coal Mining Co. Issue 5 presents the question whether petitioner is entitled to deduct those amounts in 1942 and *171 1943 as expenditures incurred and paid by him for and on behalf of the Tressler Coal Mining Co. Petitioner concedes the receipt of the disputed amounts in the years 1942 and 1943, and admits that he did not report their receipt in his individual income tax returns for those years. The respondent, therefore, did not err in including them in petitioner's income for the respective years 1942 and 1943. Petitioner, however, is entitled to a deduction of whatever portion of such amounts as he expended on behalf of the corporation. Regulations 111, sec. 29.23(a)-2. Cf. Ollie V. Kessler, 39 B.T.A. 646, 651. The evidence with respect to issue 5 consists of the testimony of the petitioner and the former bookkeeper of Tressler Coal Mining Co. They testified that the books of the latter corporation were stolen or destroyed in 1944. The loss of the records greatly handicapped the petitioner in supporting the amount of expenditures he made for and on behalf of the corporation for which he was reimbursed. The petitioner did establish satisfactorily the character of the expenditures and he was corroborated by the testimony of the bookkeeper. The purposes for which the sums were expended *172 are set forth in our findings of fact. Since the Tressler Coal Mining Co. claimed the contested amounts on its income tax returns for 1942 and 1943 and they were allowed as deductions, the corporate records undoubtedly would have supplied supporting evidence. The bookeeper so testified. Under the unusual circumstances, we have found as an ultimate fact that petitioner expended the sum of $6,229.21 in 1942 and the sum of $5,000 in 1943 for an on behalf of the Tressler Coal Mining Co. We, therefore, hold that petitioner is entitled to a deduction of the amount of $6,229.21 in 1942 and the sum of $5,000 in the taxable year 1943. On this issue we sustain the petitioner. The sixth issue presents the question whether the respondent erred in disallowing the sum of $425 claimed by petitioner as charitable contributions during 1942. The petitioner testified that he gave to each of his two widowed nieces approximately $200. Clearly these personal gifts do not qualify as charitable donations within the purview of section 23(o) of the Internal Revenue Code and are not proper charitable deductions. Petitioner testified that he made a donation to the Salvation Army in 1942, *173 but did not state the specific amount of the donation. Despite the lack of specific evidence of the actual amount contributed by the petitioner to the Salvation Army, a charitable institution within the purview of section 23(o) of the code, we are satisfied that the petitioner did make a contribution to such charity. Under the principle of Cohan v. Commissioner, 39 Fed. (2d) 540, we have allowed the difference between the amount of $425 claimed as charitable contributions and the amount of $400 the petitioner testified he had given to his two nieces, or the sum of $25, as the amount the petitioner donated to the Salvation Army. Such amount would not be out of line in view of the fact that the petitioner reported net taxable income of $20,377.20 in 1942. We hold that the petitioner is entitled to a deduction of the amount of $25 as a charitable contribution in 1942. The final issue presents the question whether the respondent erred in determining that he was not precluded by the expiration of any statutory period of limitations from assessing and collecting the additional income taxes determined to be due by and owing from the petitioner for the taxable year 1943. *174 Petitioner contends that the respondent is without authority to assess a deficiency for the year 1942 after the expiration of the three-year period prescribed in section 275(a) of the Internal Revenue Code. The deficiency notice on which the instant proceeding is predicated assesses a deficiency for 1943 and not for 1942. By duly executed forms 872, "Consent Fixing Period of Limitation upon Assessment of Income and Profits Tax," the ultimate time for assessment of tax for the year 1943 was extended to June 30, 1949. On May 27, 1949, the respondent duly mailed to the petitioner a notice of income tax liability for 1943. In computing the tax liability of petitioner, the respondent made certain adjustments in petitioner's reported income for 1942 and, in accordance with section 6(b) of the Current Tax Payment Act of 1943, determined the correct tax liability of petitioner for the year 1943. Since the respondent has not determined a deficiency against petitioner for the year 1942, we assume that the position of the petitioner is that the respondent was barred by section 275(a) in making any adjustments to the 1942 income, inasmuch as the deficiency notice here *175 involved was mailed more than three years after the 1942 return was filed. Lawrence W. Carpenter, 10 T.C. 64; William W. Todd, 10 T.C. 655; Fred B. Snite, 10 T.C. 523, affd., 177 Fed. (2d) 819, on another issue. We hold with the respondent on the issue of the statute of limitations. Decision will be entered for the respondent.