Fred A. Ziegler and Henrietta E. Ziegler v. Commissioner.
Ziegler v. Commissioner
Docket No. 27685.
United States Tax Court
1952 Tax Ct. Memo LEXIS 190; 11 T.C.M. (CCH) 572; T.C.M. (RIA) 52171; June 6, 1952
Henry H. Mathis, Esq., 911 Ky. Home Life Bldg., Louisville, Ky., for the petitioners. Lyman G. Friedman, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined deficiencies in income tax and penalties as follows: Year
Deficiency
50% Penalty
1936
$ 250.32
$ 125.16
1937
100.58
50.29
1939
123.73
61.87
1940
181.48
90.74
1941
1,787.70
893.85
1942
3,519.06
1,759.53
1943
1,107.16
1,597.53
1944
14,125.46
8,189.93
1945
5,382.91
2,691.46
1946
7,078.79
3,539.40
1947
1,146.71
573.36
*191 The first issue is whether the respondent properly and lawfully examined petitioners' records for the years 1943 and 1944. For the second issue we must determine whether respondent's net worth method of computing petitioners' taxable net income was proper for the years before us. The third issue is whether the fraud penalty is applicable. The fourth and final issue is whether the statute of limitations has tolled for all of the years prior to 1945. Findings of Fact Some of the facts are stipulated and are so found. Petitioners, Fred A. Ziegler and Henrietta E. Ziegler, his wife, reside in Louisville, Kentucky. Prior to 1929 they filed no income tax returns. For the calendar years 1929 through 1936 they filed returns indicating no tax liability. No returns were filed for the year 1937. For the calendar years 1938 through 1947 petitioners filed returns with the collector of internal revenue for the district of Kentucky. Fred A. Ziegler will hereinafter be referred to as the petitioner. Petitioner, at the age of 13, began his first business transactions. He then engaged in the cutting and selling of timber from his father's farm. A few years later, about 1908, petitioner sold *192 his own farm animals and moved to Louisville. When he arrived there he had $1,600. Petitioner was first employed in Louisville as a bartender. He found it impossible to save anything from his low salary, and he supplemented his income by placing peanut vending machines and player pianos in various saloons in the city. Petitioner married in 1908. In 1910 petitioner and one Barth bought a saloon for $4,900. A $2,900 mortgage was part of the purchase price. In 1912 he sold his interest to Barth and he immediately purchased another saloon; later this was sold for $8,000. About the same time petitioner and his father gave an aggregate of $19,000 to petitioner's crippled daughter, Caroline, to secure her future education. Shortly thereafter, sometime in 1913, the petitioner was persuaded to operate his father's property which consisted of a saloon and a grocery store. Petitioner continued to operate these businesses until 1917 when his father sold the grocery store. During the years prohibition was in effect petitioner did not operate the saloon, but with the repeal of prohibition, he again took it over. Petitioner also reacquired the grocery store. In 1933 petitioner added a night club *193 with a dance floor area of 2,500 square feet to the property he already operated. The contract price for this new building was $7,300. The furniture and improvements in the building cost an additional $6,950. A comparison of petitioner's net income, as reported and determined, and net worth is as follows: Net Income
Net Income as
Net Income as
Respondent's
Petitioner's
as reported
corrected by
adjusted by
net worth
net worth
Year
on tax return
respondent
petitioner
determination
determination
1935
$ 16,011.20
$ 98,552.17
1936
$ 7,779.10
$ 1,029.10
22,590.30
98,381.27
1937
5,314.43
(285.57)
26,704.73
96,895.70
1938
$ 2,186.03
2,366.22
16.22
27,570.95
95,711.92
1939
918.37
5,893.34
3,293.34
31,964.29
97,805.26
1940
1,888.12
6,212.20
1,612.20
35,231.47
97,472.44
1941
3,391.15
12,385.59
2,085.59
44,097.06
97,538.03
1942
1,169.32
13,573.94
5,673.94
55,363.88
102,904.85
1943
3,205.48
12,947.37
(4,252.63)
64,026.15
96,867.12
1944
3,827.75
35,494.12
17,534.83
81,843.61
112,134.58
1945
9,169.10
20,616.90
15,154.74
94,093.52
123,634.49
1946
10,466.09
25,983.87
(3,874.13)
104,420.88
115,441.85
1947
2,892.94
7,752.17
2,602.17
105,357.11
114,728.08
*194 Respondent has included in petitioner's net worth statement the value of certain United States Series B and Series E bonds issued in the name of Henrietta E. Ziegler and Mrs. Caroline Seng (petitioners' daughter). All Series B bonds were cashed, and the "signature on the receipt of redemption shows the signature of Caroline C. Seng." None of the Series E bonds was cashed. These bonds, both the Series B and E, were the property of petitioner's daughter. They were acquired with assets owned by her prior to the pertinent years and are not properly includible in petitioner's net worth statement. In each of the years 1946 and 1947 petitioner's daughter was indebted to him in the amount of $11,000. The living expenses of petitioner and his wife were as follows: Year
Amount
1936
$1,200
1937
1,200
1938
1,500
1939
1,500
1940
2,500
1941
$3,000
1942
3,500
1943
4,000
1944
4,000
1945
4,000
1946
4,500
1947
4,500
Petitioner improved the house at "1038 Ash Street, Louisville," and the reasonable amount of such improvement was $2,000. Under date of July 26, 1948, petitioner and his wife, in a written power of attorney, appointed Henry H. Mathis their *195 true and lawful attorney to represent them before the Bureau of Internal Revenue, United States Treasury Department, in connection with their income tax liabilities for the calendar years 1940 through 1947, and in the power of attorney they stated: "And we hereby request and direct that all correspondence, documents, warrants or other data in connection with this matter be sent in care of our said attorney." On October 29, 1948, respondent served petitioner and his wife, in accordance with the power of attorney, with a notice of inspection of their books for income tax liabilities for the calendar years 1940 through 1947. This notice was delivered to petitioner's attorney, Henry H. Mathis. At the time of the delivery of the notice to their attorney the power of attorney was in full force and effect. Respondent's notice of inspection of the books for the income tax liabilities of petitioner and his wife for the calendar years 1940 through 1947 was in compliance with section 3631 of the Internal Revenue Code. For each of the taxable years before us petitioners filed a false and fraudulent return with intent to evade tax. Opinion The first issue is whether *196 respondent properly notified petitioner in writing, as required by section 3631 of the Code, that an additional inspection of petitioner's books of account for the years 1943 and 1944 was necessary. Petitioner contends that delivery of the notice of the inspection to his attorney, Henry H. Mathis, was not notice to "the taxpayer" as required by the Code. Section 3631 provides that "No taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless * * * the Commissioner, * * * notifies the taxpayer in writing that an additional inspection is necessary." The question of the jurisdiction of this Court to take any action under section 3631 need not be decided because the evidence does not show that the petitioner was subjected to unnecessary examination. Emily Marx, 13 T.C. 1099. See Leslie A. Sutor, 17 T.C. 64. However, in addition to petitioner's failure to show a violation, on July 26, 1948, petitioner and his wife executed a power of attorney whereby they made and appointed Henry H. Mathis their true and lawful attorney to act in their names, *197 place and stead to sign, make, execute, file and prosecute before the Bureau of Internal Revenue, all claims and defend against all proposed additional taxes for the years 1940 through 1947. In this power of attorney petitioner and his wife made a specific mandate and directed "that all correspondence, documents, warrants or other data in connection with this matter be sent in care of our said attorney". The petitioner by his own act authorized an agent to represent him before the Bureau of Internal Revenue. Under the long established rules of agency, notice to a duly authorized agent is notice to his principal. Here, the agent admits that he received the respondent's letter notifying the petitioner of the proposed inspection. This notice was presented while the power of attorney was in full force and effect. We hold that there has been compliance within section 3631 so that there has been notice to "the taxpayer". The second issue is whether respondent properly computed petitioner's net income by the net worth method. The parties stipulated that respondent's determination was correct except for certain items in the net worth computation. We have made findings of fact as to these *198 disputed items, and shall further discuss them below. In addition to alleging error as to the individual items in the net worth computation, petitioner also questioned the authority of the respondent to compute his net income upon a net worth basis. Respondent has not erred in using this method. The disparity between petitioner's net income as reflected in his tax returns and his actual increase in net worth unquestionably shows that his books and records, which were used for the tax returns, did not properly reflect his income. Where this situation prevails, we have approved respondent's authority to employ the net worth basis to ascertain income. See White v. Commissioner (C.A. 3), 196 Fed. (2d) 728 (decided May 16, 1952), affirming Memorandum Opinion of the Tax Court [10 TCM 1014], and also Arlette Coat Co., Inc., 14 T.C. 751. The approval of this method is clearly in conformity with section 41 of the Code. [1]
*199 The first of the disputed items and perhaps the keystone of the entire case is the question whether petitioner's 1935 net worth of $98,552.17 included $65,000 cash on hand on December 31, 1935. Actually petitioner maintains that this money was part of some $75,000 which he held from 1913. In explaining the source of this accumulation, petitioner offers an incredible story. He stated that he came to Louisville from his father's farm with only $1,600; he went to work as a bartender, and for additional income he leased player pianos and vending machines. From these activities he accumulated a sum of money, and he purchased an interest in a bar. He claims to have subsequently sold his interest to his partner for $16,000. He also states that he received $17,000 for detective work in 1912. These items, allegedly, were in part the source of the $65,000; no explanation was given for the excess over $16,000 and $17,000. The sale of the bar for $16,000 to the partner was completely contradicted by the partner's statement that all he paid petitioner was $2,000. Petitioner's claim to his detective work was denied by the attorneys for whom he allegedly worked. While the attorneys themselves *200 were not available to testify, an account of affidavits filed by them in another case was presented to us, and this evidence diametrically opposes the petitioner's contention. In view of the weakness of the explanation of the source of petitioner's money we are not required to believe it. See Carmack v. Commissioner (C.A. 5, 1950), 183 Fed. (2d) 1. We can not find as a fact that petitioner held the $65,000 cash as alleged. For the next disputed item petitioner contends that respondent erred when he did not include in the net worth statement an alleged $3,000 improvement on a house at "1038 Ash Street". The testimony is clear and convincing that there was an improvement. The petitioner built a new second story and added some plumbing facilities. However, the testimony as to the amount spent was based on an estimate. From the record we have determined that the amount spent on improvements was $2,000. The next item in dispute in the net worth computation is the cost of the new night club and its furniture and fixtures. Respondent allowed $3,000 for the building and nothing for the furniture and fixtures. In light of the evidence that the building cost $7,320 and that *201 $6,950 was spent for the furniture and fixtures, we have found that these values must be used in computing the income on the net worth basis. Petitioner originally alleged error in respondent's exclusion of the Morgan and Hoertz property from the net worth statement for 1935; however, the exclusion was proper since the property was sold prior to 1935. The inventory item must remain as determined by respondent. Petitioner has waived any error concerning it. Respondent determined that certain United States Series B and Series E bonds purchased in the name of Henrietta E. Ziegler and her daughter, Mrs. Caroline Seng, should be credited to petitioner's net worth. Petitioner contends that these bonds were purchased by the daughter with her own money. If this were the petitioner's uncorroborated statement there might be some doubt as to the credibility of the contention; however, the record is replete with corroborating testimony, and the petitioner must be sustained. Respondent determined that one of petitioner's assets in 1947 was an indebtedness of petitioner's daughter in the amount of $11,000. Petitioner contends that this sum was reduced by part payments of $1,650 and thus *202 reduced the asset to the amount of $9,350. The record does not support the correctness of petitioner's contention as to this item. We have no books of account, cancelled checks, or testimony of the amount paid, and in the absence of such proof, the respondent must be sustained. Another item in the net worth computation in issue is respondent's determination that petitioner in the years 1944, 1945 and 1946 gave his daughter the amounts of $12,909.29, $2,212.16 and $8,338. These amounts were determined on the basis of an increase in the daughter's net worth, and on the theory that she had not disclosed the source of money used to purchase certain real property. Petitioner contends that his daughter purchased the property with her own money, and the evidence is such that he must be sustained. The final item in issue in the net worth computation is respondent's determination of petitioner's living expenses. Petitioner contends that he and his wife epitomized the frugal and thrifty life. They raised and canned most of their food, including poultry, and even made their own clothing. They paid no rent and indulged in little entertainment. Petitioner contends that $1,200 for the years *203 1936 to 1939 and $1,500 for the subsequent years is an ample allowance for their living expenses. The record indicates that they maintained three homes. In the years after 1939 petitioner had regular medical bills of $300 or more per year. They made annual trips to Florida and during part of this time they owned and operated an automobile. We believe that $1,200 or $1,500 per year is insufficient to cover these expenses; therefore, we have found the reasonable living expenses of petitioner to be used in the net worth statement. The third issue involves the applicability of the fraud penalty. To establish fraud by direct proof of intention is seldom possible. Usually it must be gleaned from the transactions in question, and the conduct of the parties thereto. Respondent has the burden of proof in fraud issues and though in most instances a difficult task, because the facts which evince fraud are usually within the exclusive knowledge of the taxpayer, respondent has successfully carried the burden in this case. When we compare the reported income as per petitioner's tax returns with the income as determined by the net worth method, the variances are so great that the unexplained variances *204 themselves indicate a fraudulent purpose. We would be less inclined to make this statement if only the net worth income as determined by the respondent varied with that as reported in the tax returns. However, after a circumspect examination of the net worth income as determined by petitioner himself, the evidence is so convincing as to preclude anything but a fraudulent purpose when he reported his income for tax purposes. Year after year, without excuse, the petitioner has failed to report his full income. This is no border line case where a taxpayer might have been neglectful as to a single year. Instead we find a pattern, a consistent course of conduct whereby the petitioner failed to report his full income. In this circumstance we can only conclude that petitioner's course of conduct was intentional, deliberate, and fraudulent, and his whole purpose was based upon an intent to evade payment of tax. In the fourth and final issue, petitioner contends that for all years prior to 1945 the statute of limitations has tolled against any additional assessment. In the absence of fraud petitioner's contention might prevail; however, the Code in section 276(a) provides "in the case of *205 a false and fraudulent return with intent to evade tax * * * the tax may be assessed * * * at any time". We have determined above that there has been fraud with intent to evade tax; therefore, the statute of limitations has not tolled against any additional assessments for the years before us. Decision will be entered under Rule 50. Footnotes
1. SEC. 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *↩